Oscar M. DEETZ, Administrator of the Estate of Forrest A. Zonker, Deceased, and Oscar M. Deetz, Administrator of the Estate of Orda O. Zonker, Deceased, Defendants-Appellants,

v.

Andrew McGOWAN and John A. McGowan, by his next friend, Andrew McGowan, Plaintiffs-Appellees.

No. 3–1178A310.

Court of Appeals of Indiana, Third District.

May 14, 1980.

# 1162

John Martin Smith, Smith & Atz, Auburn, for defendants-appellants.

Joe A. Rowe, Finley, Finley, Rowe, Laur & Spindler, Kendallville, for plaintiffs-appellees.

GARRARD, Presiding Judge.

On April 3, 1973, a default judgment in the amount of $140,000 was rendered in the Noble Circuit Court against Forrest and Orda Zonker, husband and wife, in favor of Andrew and John McGowan, father and son, as a result of a suit brought for personal injuries suffered in an automobile accident. An execution was issued to the Sheriff of DeKalb County in an attempt to collect the judgment, but it was returned wholly unsatisfied. The McGowans then moved to enforce the judgment by proceedings supplemental and the trial court ordered the judgment debtors to appear and answer as to their property, income, and profits subject to execution. A series of hearings began to discover these assets of the Zonkers.

In the hearings, it was disclosed that in the fall of 1972, Mrs. Zonker had sold a farm for $27,500. On June 14, 1973, the court ordered that the balance of those proceeds remaining in the possession of the Zonkers, less $300, be placed in a special savings account with the Albion National Bank.[1] The record does not reveal the exact form in which this account was opened. By July of 1973, $24,700 had been deposited. Meanwhile, on June 28, 1973, the Zonkers filed a motion for relief from the default judgment, seeking to have it set aside. On January 2, 1974, Mr. Zonker died intestate. Oscar M. Deetz was appointed administrator and was substituted as a party defendant.

On August 16, 1974, the Zonkers' motion for relief from the default judgment was denied. A motion to correct errors was filed and overruled by the trial court. Subsequently, an appeal was taken to this district, and in a memorandum decision dated July 20, 1977, we affirmed the overruling of the Zonkers' motion to set aside the default judgment. A petition for rehearing was filed and denied, and on January 23, 1978, the Supreme Court refused to grant transfer. On March 17, 1978, Mrs. Zonker died intestate, and Oscar Deetz was appointed administrator. Since Mrs. Zonker died a resident of DeKalb County, the DeKalb Circuit Court took jurisdiction over the administration of her estate.

On April 24, 1978, the McGowans petitioned the Noble Circuit Court to order the Albion National Bank to release and pay over to them the sum of money which had been deposited in the bank pursuant to court order of June 14, 1973. At this time, the amount on deposit exceeded $30,000. Oscar Deetz opposed this petition on the grounds that the bank funds properly belonged to the estates of the deceased judg-

---

1. We do not know why the trial court ordered these funds to be placed in a bank account instead of having them transferred to the McGowans. We can only speculate that the trial judge was aware that the Zonkers would shortly file a motion to have the default judg-

ment set aside and perhaps wanted to await the eventual outcome of the ruling on that motion, including a possible appeal, before finally giving possession of the money to the McGowans.

ment debtors, that there remained certain unpaid administration and funeral expenses of the decedents, and that the McGowans had to proceed in accordance with IC 29–1–14–9 (Supp.1979) which establishes a priority list of claims pursuant to which a personal representative is to make payment in case the estate assets are insufficient to pay all claims. On June 20, 1978, the trial court granted the McGowans' petition to have the bank deposits released to them. However, the court also granted Oscar Deetz's motion to stay enforcement of this ruling pending an appeal. A motion to correct errors was submitted and denied, and an appeal to this court was then brought.

■ Before we reach the merits of the primary issue, we must first dispose of three preliminary matters. In his appellant's brief, Deetz contends that the sum of money in the Albion National Bank became a part of the estates of both Forrest and Orda Zonker at the time of their respective deaths. However, in his motion to correct errors, Deetz addresses only the question of whether the bank funds became a part of Orda Zonker's estate at the time she died. Therefore, the argument as to the rights of Mr. Zonker's estate is waived, and we will deal solely with the rights of Mrs. Zonker's estate. *Dawson v. State* (1975), 163 Ind. App. 493, 324 N.E.2d 839.

■ Deetz also contends that the trial court erred when it granted the McGowans' petition to require him to post a bond for a stay of execution of the court's order to release the bank funds. It appears from the record that the trial court did order that such a bond be posted. However, any error has been rendered moot because the court subsequently vacated this order. There is no indication in the record that Deetz ever filed a bond.

■ In addition, the McGowans assert on appeal that Deetz is precluded from contesting the propriety of the trial court's order to have the Zonkers' money placed in a special account with the Albion National Bank since this was a matter that could have been raised in the first appeal. Accordingly, the McGowans contend that the issue is waived. This argument is without merit. Deetz is not attacking the original order of June 14, 1973 in which the trial court directed the Zonkers to deposit the proceeds in question in the Albion National Bank. Rather, he argues that since Orda Zonker died before the trial court ordered the funds to be transferred from the bank to the McGowans, these funds properly belong to her estate. Clearly, this issue could not have been asserted in the first appeal which terminated almost two months prior to Mrs. Zonker's death. There is no waiver.

We now address the primary question presented for review. Deetz contends that the money on deposit became part of Mrs. Zonker's estate at her death and that since her assets are insufficient to pay all claims against the estate, the McGowans' claim should be subordinated to the costs of administration, funeral expenses, and medical expenses for the last sickness of Mrs. Zonker in accordance with IC 29–1–14–9 (Supp. 1979).[2] We will assume, without deciding,

2. That statute provides,
    "Sec. 9. All claims shall be classified in one (1) of the following classes. If the applicable assets of the estate are insufficient to pay all claims in full, the personal representative shall make payment in the following order:
    (1) Costs and expenses of administration.
    (2) Reasonable funeral expenses. However in any estate in which the decedent was a recipient of public assistance under "The Welfare Act of 1936", IC 21–1–1 through IC 12–1–12, the amount of funeral expenses having priority over any claim for the recovery of public assistance shall not exceed the limitations provided for under IC 12–1–5–11; IC 12–1–6–11; IC 12–1–7–13; IC 12–1–7.1–13; and IC 12–1–19–1.
    (3) Allowances made under IC 29–1–4–1.
    (4) All debts and taxes having preference under the laws of the United States.
    (5) Reasonable and necessary medical expenses of the last sickness of the decedent, including compensation of persons attending him.
    (6) All debts and taxes having preference under the laws of this state; but no personal representative shall be required to pay any taxes on any property of the decedent unless such taxes are due and payable before possession thereof is delivered by the personal

that this money did become part of Mrs. Zonker's estate upon her death. The issue then becomes one of priority.

In *Snyder v. Thieme & Wagner Brewing Co.* (1910), 173 Ind. 659, 90 N.E. 314, the court was faced with the problem of construing a statute similar to IC 29–1–14–9. In deciding that the mere judgment lien of a creditor was not to be preferred over administration, funeral, and last illness expenses, the court declared,

> "It is evidence that § 2901, [*supra*,] contemplates and intends that the estate of a deceased person, whether such estate be solvent or insolvent shall, in addition to the expenses of administration, be charged with the payment of the reasonable expenses of the funeral of the decedent and the reasonable expenses of his last sickness, and that these expenses shall rank and be preferred over all other liabilities of the estate *except specific liens.*"

*Id.* at 663–64, 90 N.E. at 316 (emphasis added). Specific liens thus have first preference. *See also Hildebrand v. Kinney* (1909), 172 Ind. 447, 87 N.E. 832.

▉ The most obvious example of a specific lien in this context is that of a mortgage executed by a decedent during his lifetime covering property owned by him. *Snyder, supra.* Upon the death of the mortgagor, the mortgagee may assert this specific lien as a claim against the estate, *Thurston v. Buxton* (1941), 218 Ind. 585, 34 N.E.2d 549; *Demma v. Forbes Lumber Co.* (1961), 133 Ind.App. 204, 178 N.E.2d 455; IC 29–1–14–2 (1976), or he may waive his right to participate in the assets of the estate and instead rely on his mortgage security in a foreclosure action to satisfy the debt. *Hawkins v. First National Bank* (1929), 201 Ind. 228, 165 N.E. 547; *In re Estate of Smith* (1979), Ind.App., 388 N.E.2d 287. It has been held that the specific lien of a mortgagee takes precedence over costs of administration, funeral expenses, and expenses of the decedent's last sickness. *Ryker v. Vawter* (1889), 117 Ind. 425, 20 N.E. 294; *Brown v. Nunn* (1921), 79 Ind.App. 71, 133 N.E. 14. *See also Thurston v. Buxton* (1941), 218 Ind. 585, 34 N.E.2d 549.

▉ There are other specific liens that may be created prior to a decedent's death. For example, when an execution is issued upon a judgment, the judgment creditor acquires a lien, *Coldren v. American Milling Research & Development Institute, Inc.* (1978), Ind.App., 378 N.E.2d 870, which attaches to the judgment debtor's general personalty that is subject to execution. *Ralston Purina Co. v. Detwiler* (1977), Ind. App., 364 N.E.2d 180. Thus, the lien is of a general nature. However, when a levy of the execution is made, and the sheriff seizes particular property, the judgment creditor then obtains a specific lien as to such property. *Quakenbush v. Taylor* (1882), 86 Ind. 270. *See also Wheeler v. Haines* (1888), 114 Ind. 108, 15 N.E. 827; IC 34–1–37–10 (1976). If the judgment debtor should die after the levy, presumably the judgment creditor would have priority over other claims against the estate. *Cf. Doe v. Heath* (1844), 7 Blackf. 154 (judgment debtor died after property levied; in ejectment suit brought by debtor's heirs, court held that sheriff's sale after debtor's death was valid).[3]

---

representative pursuant to the provisions of IC 29–1.
(7) All other claims allowed.
No preference shall be given in the payment of any claim over any other claim of the same class, nor shall a claim due and payable be entitled to a preference over claims not due. As amended by Acts 1979, P.L. 268, SEC. 5.

**3.** The decision of *Dixon v. Aldrich* (1891), 127 Ind. 296, 26 N.E. 843, cited by Deetz, is distinguishable. There, a judgment was rendered against the husband of the plaintiff. During the husband's lifetime, the sheriff levied on property belonging to the husband. The husband then died. The widow claimed that the levy did not affect her right to the $500 allowance given to her by statute. The Supreme Court agreed and decided that the widow's claim had precedence. However, the Court based its decision on the fact that had the husband lived, he could have asserted an amount equivalent in value to $600 as *exempt* from execution.

In the case at bar, the execution was returned unsatisfied, and hence there was no levy. However, the McGowans did initiate proceedings supplemental to execution. When these proceedings are commenced and there has been service of process and notice on the judgment debtor as well as any persons indebted to him, the judgment creditor then acquires a lien on the fund intended to be reached. *Hoadley v. Caywood* (1872), 40 Ind. 239; *Cooke v. Ross* (1864), 22 Ind. 157; *Graydon v. Barlow* (1860), 15 Ind. 197; *Union Bank & Trust Co. v. Vandervoort* (1951), 122 Ind.App. 258, 101 N.E.2d 724. In *Butler v. Jaffray* (1859), 12 Ind. 504, the court referred to this lien as a *specific* lien.

In the present case there is little doubt that the McGowans intended specifically to reach the sale proceeds when they commenced their proceedings supplemental. Their motion specifically requested inquiry into the consideration for the sale of the farm. Arguably, upon the above-cited authorities, a specific lien was perfected when the proceedings were initiated and the Zonkers were properly brought before the court. However, we have no doubt of that result where, as here, the court then ordered the Zonkers to divest themselves of the money and established a special bank account which placed the funds beyond the Zonkers' control.[4] We therefore hold that by virtue of this specific lien, the McGowans were entitled to resort to their security, as would a mortgagee, and petition the Noble Circuit Court to have the funds re-

leased to them in preference to costs of administering Mrs. Zonker's estate, her funeral expenses, and expenses of her last illness.

One more matter remains for our consideration. The McGowans have requested that we assess damages against Deetz pursuant to Indiana Rules of Procedure, Appellate Rule 15(G) for bringing a frivolous appeal. The decision to award these damages lies within the discretion of the appellate court and should be done only upon a strong showing of bad faith on the part of the appellant. *American Savings and Loan Association v. Hoosier State Bank* (1975), 167 Ind.App. 43, 337 N.E.2d 486. Further, the penalty may be assessed when an appeal is taken merely to harass or delay the appellee, thus presenting an instance of vexatious litigation. *Marshall v. Reeves* (1974), 262 Ind. 403, 316 N.E.2d 828. We believe that the appeal in the case at bar possessed sufficient merit to withstand an award under Appellate Rule 15(G). The McGowans' request is accordingly denied.

Judgment affirmed.

HOFFMAN and STATON, JJ., concur.

---

4. In directing the funds to be held in a special bank account, the trial court stated that "none of said funds shall be paid out until further order of the Court to any person." Mrs. Zonk-er made an attempt thereafter to have the court release $2,000 to her for personal expenses, but she was unsuccessful.