**In the Matter of U.S. MARKETING CONCEPTS, INC., Debtor.**

**Bankruptcy No. 89–10202.**

United States Bankruptcy Court,
N.D. Indiana, Fort Wayne Division.

March 29, 1990.

Ward W. Miller, Fort Wayne, Ind., for movant.

Mark A. Warsco, Fort Wayne, Ind., for trustee.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court on a motion for relief from stay filed on behalf of Don Jacobs Toyota, Inc. and Don Jacobs Buick–Subaru, Inc. (collectively "Don Jacobs"). The motion presents no factual issues—only legal ones. Accordingly, the matter was submitted based upon the contents of the parties' various pre-trial submissions and the briefs of counsel.

On May 25, 1988, Don Jacobs obtained a judgment against the debtor in the Wisconsin state courts. This judgment was domesticated in Indiana on August 5, 1988. On October 19, 1988, proceedings supplemental were initiated with the Allen Superior Court in an effort to collect the judgment. As part of these proceedings, Herbert J. Weber and Advertising and Marketing Services, Inc. were named as garnishee-defendants. On that date, the appropriate notices and garnishment summonses were issued to the garnishees and, shortly thereafter, served upon them. The garnishment proceedings against these two parties were the result of transfers they had received from the debtor, allegedly made with the intent to hinder, delay or defraud debtor's creditors.

The issues raised by the garnishment proceedings were tried to the Allen Superior Court on January 17, 1989. Before the state court could render its decision, however, on February 16, 1989, the debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. Following the petition, Mark A. Warsco was appointed and qualified as the bankruptcy trustee.

As a result of an earlier motion, by an order dated March 14, 1989, this court vacated the automatic stay to the extent necessary to allow the Allen Superior Court to enter its findings of fact, conclusions of law, and decision in the garnishment proceeding. Don Jacobs was also authorized to enforce any judgment which might be entered in its favor. In spite of this relief, the order specifically provided that Don Jacobs' rights to any such judgment or recovery would be held subject to the rights of the bankruptcy trustee.

Following this court's order of March 14, 1988, the state court entered findings of fact, conclusions of law, and an order on April 3, 1989. In doing so, Judge Hines found that the garnishee-defendants, Herbert J. Weber and Advertising and Marketing Services, Inc., had received fraudulent transfers from the debtor in amounts which were "far greater" than debtor's obligations to Don Jacobs. As a result, the garnishees were ordered to satisfy the judgment against the debtor. This obligation was made joint and several. Although appealed, the trial court's decision was affirmed on December 27, 1989. *See U.S. Marketing Concepts, Inc. v. Don Jacobs Buick–Subaru, Inc.*, 547 N.E.2d 892 (Ind.App.1989), *reh'g denied*, February 14, 1990.

Presently pending before this court, as adversary proceeding 89–1055, is the trustee's suit against Herbert J. Weber and Advertising and Marketing Services, Inc. That proceeding seeks to recover judgment on behalf of the bankruptcy estate as a result of the same fraudulent conveyances which were the subject of Don Jacobs' garnishment proceedings in the Allen Superior Court.

By the current motion, Don Jacobs renews their original request that we fully vacate the automatic stay and allow them to collect and retain for their own benefit the garnished property, free from the claims of the bankruptcy trustee. Movants contend they hold a lien against the proceeds of debtor's fraudulent conveyances in the hands of the garnishee-defendants, which is a paramount to the interests of the bankruptcy trustee. In opposition, the trustee maintains that movants did not hold a perfected lien as of the date of the petition. Relying on the status given to the

bankruptcy trustee by 11 U.S.C. § 544(a), the trustee contends that its interest in any proceeds recoverable on account of the fraudulent conveyances is superior to that of Don Jacobs. Accordingly, the motion requires the court to determine the relative priority of competing interests in the proceeds recoverable on account of a fraudulent conveyance, as between a bankruptcy trustee and a judgment creditor who initiated proceedings to set aside that conveyance, through proceedings supplemental and the garnishment process, prior to the petition for relief.

■ A petition for relief under title 11 creates the automatic stay of § 362 and the bankruptcy estate of § 541. Both are incredibly broad. The automatic stay prohibits any action to collect or recover a pre-petition debt from property of the estate. This prohibition extends to the use of judicial process, the enforcement of judgments, and the creation, perfection or enforcement of liens against property of the estate. *See generally* 11 U.S.C. § 362(a). The bankruptcy estate is equally broad. Wherever located and by whomever held, the estate consists of all interests the debtor may have in property, as of the commencement of the case, and any interest in property the trustee may recover by using the various powers it is given by the Bankruptcy Code. *See generally* 11 U.S.C. § 541(a). As a result, the bankruptcy estate consists of much more than what one might traditionally associate with the concept of property of a debtor and the debtor's claims against third parties. The bankruptcy estate extends to include any cause of action that the trustee may be entitled to prosecute against third parties for the benefit of the estate and, ultimately, its creditors.

■ While the automatic stay does not directly protect non-debtors, when these two portions of the Bankruptcy Code are combined, their full impact prohibits a creditor's prosecution of an action against a non-debtor where the claim is one which could also be asserted by the bankruptcy trustee. Thus, by protecting property of the estate, the automatic stay prevents the prosecution of certain claims against non-

debtors where those claims are property of the estate. *Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1148 (5th Cir.1987). Included within this type of prohibited proceeding are actions against the officers, directors, or shareholders of a corporation to pierce the corporate veil under various theories. *Koch Refining v. Farmers Union Central Exchange, Inc.,* 831 F.2d 1339 (7th Cir.1987); *Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142 (5th Cir.1987); *Steyr–Daimler–Puch of America Corp. v. Pappas,* 852 F.2d 132 (4th Cir.1988); *In re MortgageAmerica Corp.,* 714 F.2d 1266 (5th Cir.1983). Also included are actions to recover fraudulent conveyances of a debtor's property. *Carlton v. BAWW, Inc.,* 751 F.2d 781 (5th Cir.1985); *MortgageAmerica, supra,* 714 F.2d at 1275–1276.

In this way the breadth of the automatic stay helps to ensure one of the primary goals of the bankruptcy process—a ratable distribution of the bankruptcy estate—by protecting creditors from each other. *See Young v. Higbee Co.,* 324 U.S. 204, 210, 65 S.Ct. 594, 597, 89 L.Ed. 890 (1945). It "prevents a multi-jurisdictional rush to judgment whose organizing principle could only be first-come-first-served, and protects the interests of all creditors by treating like-situated claimants equally." *MortgageAmerica, supra,* 714 F.2d at 1274. Bankruptcy vests the right to prosecute such claims in the trustee, who is given complete authority over them, for the benefit of all creditors. *Steyr–Daimler–Puch, supra,* 852 F.2d at 136; *Koch Refining, supra,* 831 F.2d at 1348; *Carlton, supra,* 751 F.2d at 785. By doing so, "[t]he trustee's single effort eliminates the many wasteful and competitive suits of individual creditors." *Koch Refining, supra,* 831 F.2d at 1342–1343.

A bankruptcy petition not only creates the automatic stay and the bankruptcy estate but it also confers upon the trustee a certain status *vis-a-vis* the estate and its creditors. The trustee is vested with a number of powers which can be exercised for the benefit of the estate and all of its various claimants. A primary source of

the trustee's status and authority is found in the "strong arm powers" of § 544(a).

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists. 11 U.S.C. § 544(a)(1) & (2).

The ultimate effect of this section is to give the trustee a perfected lien upon all property of the estate as of the date of the petition. Thus, in combination with the automatic stay,

Section 544 preserves within the bankruptcy proceeding the equities among creditors that existed outside bankruptcy. It freezes the relative positions of secured and unsecured creditors at the time of the filing, reducing the incentive to file a strategic bankruptcy petition, and awarding the diligent creditor. *In re Wind Power Systems, Inc.*, 841 F.2d 288, 293 (9th Cir.1988) (citing Thomas H. Jackson, *The Logic and Limit of Bankruptcy Law* 68–88).

Since the trustee obtains this status only as of the date of the petition, its rights may be subject or subordinate to competing interests in the estate's property which arose prior to the date of the petition.

■ Through § 544(a), the Bankruptcy Code invests the trustee with the status of a hypothetical lien creditor. It does not, however, identify the rights and powers of such a creditor. Instead, state law determines the significance of the status which has been conferred upon the trustee. *See Matter of Chaseley's Foods, Inc.*, 726 F.2d 303, 307 (7th Cir.1983). "Sections 544(a)(1) & (2) follow state law ... in giving the trustee no *greater* rights than the judgment creditor would have." *Belisle v. Plunkett*, 877 F.2d 512, 515 (7th Cir.1989) (emphasis original). If the rights of a competing claimant to property of the estate "would trump those of a judgment creditor" they will defeat the claim of the trustee, who exercises its rights for the benefit of all. *Id.* Consequently, if the rights Don Jacobs obtained through the pre-petition proceedings supplemental and garnishment would defeat the rights of a subsequent judgment creditor, they have priority over the rights of the trustee in the proceeds recoverable on account of the fraudulent conveyance to the garnishment-defendants.

■ "A proceeding supplementary to execution is an independent action related to, but not part of, the original case in which the judgment sought to be collected by the judgment creditor was rendered." *Mitchell v. Godsey*, 222 Ind. 527, 53 N.E.2d 150, 154 (1944). The only issue presented is that of affording the judgment creditor the relief to which it is entitled under the terms of the judgment. *Id.* The proceedings are designed to discover and reach property which can be made available for the satisfaction of the judgment. *Union Bank & Trust Co. of Kokomo v. Vandervoort*, 122 Ind.App. 258, 101 N.E.2d 724, 727 (1951). *See also Coak v. Rebber*, 425 N.E.2d 197 (Ind.App.1981); *Baker v. Powell*, 124 Ind.App. 77, 114 N.E.2d 894 (1953). Everything which may be made available for the satisfaction of judgments can be reached through proceedings supplemental. *Union Bank & Trust, supra*, 101 N.E.2d at 727.

■ The garnishment process may properly be used in conjunction with proceedings supplemental. Post-judgment garnishment is "intended to subject property in the hands of a third party to payment of the judgment against the defendant." *Radiotelephone Co. of Indiana v. Ford*, 531

N.E.2d 238, 243 (Ind.App.1988). *See also Lakeshore Bank & Trust Co. v. United Farm Bureau Mutual Insurance Co.*, 474 N.E.2d 1024, 1026 (Ind.App.1985). From the date the garnishment summons is served upon it, the garnishee is accountable to the judgment plaintiff for any money, property or credits in its possession belonging to or due the judgment debtor. I.C. 34–1–11–21.

The Indiana courts have consistently viewed the garnishment process as creating a lien upon the judgment debtor's property in the possession of the garnishee. The lien arises when the garnishment summons is served upon the garnishee-defendant. *Pouder v. Tate*, 132 Ind. 327, 30 N.E. 880, 881 (1892); *Cooke v. Ross*, 22 Ind. 157, 159 (1864); *Radiotelephone, supra*, 531 N.E.2d at 240; *First Bank v. Samocki Bros. Trucking Co.*, 509 N.E.2d 187 (Ind. App.1987); *Lakeshore, supra*, 474 N.E.2d at 1026–1027; *Union Bank & Trust, supra*, 101 N.E.2d at 727. It is a specific lien upon identifiable property, in that it attaches to the assets sought to be reached in the possession of the garnishee. *See Butler v. Jaffray*, 12 Ind. 504, 510–511 (1859); *Deetz v. McGowan*, 403 N.E.2d 1160, 1165 (Ind.App.1980).

Once the lien has attached, without the permission of the garnishor or an order of the court, neither the judgment debtor nor the garnishee can take any action with regard to the property in question which can defeat the judgment creditor's interest in it. *Pouder, supra*, 30 N.E. at 881; *Cooke, supra*, 22 Ind. at 159; *Radiotelephone, supra*, 531 N.E.2d at 241; *Union Bank & Trust, supra*, 101 N.E.2d at 727. Instead, the lien continues until it has been satisfied, through delivery of the garnished property, or until the garnishee is discharged. In the event of an improper disposition of the garnished property, the garnishee is treated as though it still had possession and may be required to pay a second time. *Lakeshore, supra*, 474 N.E.2d at 1027.

Despite the accountability imposed upon the garnishee by I.C. 34–1–11–21, the Indiana garnishment lien does not have a statutory origin or duration. *Radiotelephone, supra*, 531 N.E.2d at 243. It is an equitable lien. *Id.* at 241; *Lakeshore, supra*, 474 N.E.2d at 1027. "The equitable lien is intended to preserve the property of the judgment debtor in the hands of a third party pending review and disposition by the proceedings supplemental court." *Radiotelephone, supra*, 531 N.E.2d at 241. It continues to exist for as long as may be necessary to permit this review. *Id.* at 243. This equitable lien may eventually ripen into a legal right, should the judgment plaintiff ultimately prevail in the garnishment action and obtain an order requiring the payment or delivery of the garnished property to it. *See Routh, Adm'r v. Spencer*, 38 Ind. 393, 398 (1871); *Union Bank & Trust, supra*, 101 N.E.2d at 727.

The Trustee argues that because the competing interests of the judgment debtor, the garnishor and the garnishee are not determined until the entry of judgment in the garnishment proceeding, the garnishment lien is not "perfected" until that time and remains incomplete until the proceedings supplemental are concluded.[1] The Supreme Court rejected a similar argument in considering an attempt to avoid the interest which arose out of a creditor's bill in equity, commenced more than four months prior to bankruptcy but not concluded until within the avoidance period. *See Metcalf Brothers & Co. v. Barker*, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122 (1902). In doing so, the Court observed:

The general rule is that the filing of a judgment creditors' bill and service of

---

1. It would seem that the trustee has misconstrued the Court of Appeals' decision in *Lakeshore*, 474 N.E.2d 1024, in advancing this argument. There the court recognized that the lien which arises upon service of the garnishment summons is discharged when the garnishment proceedings and the garnishee are themselves discharged. It then held that the voluntary dismissal of the garnishee with prejudice constituted an adjudication of the questions concerning the garnishee's possession of property belonging to the judgment defendant. Accordingly, a second proceeding as to the same property was barred. *Id.* at 1028.

process creates a lien in equity on the judgment debtor's equitable assets.

\* \* \* \* \* \*

Doubtless the lien created by a judgment creditor's bill is contingent in the sense that it might possibly be defeated by the event of the suit, but in itself, and so long as it exists, it is a charge, a specific lien, on the assets, not subject to being devested save by payment of the judgment sought to be collected.

\* \* \* \* \* \*

[T]he right to payment out of the fund so vested cannot be affected by a subsequent transfer by the debtor ... or taken away by a subsequent discharge in bankruptcy. *Metcalf Brothers, supra,* 187 U.S. at 172–173, 23 S.Ct. at 70 (citations omitted).

The Court then concluded: "[I]t is the lien created by a levy, or a judgment, or an attachment, or otherwise that is invalidated.... A judgment or decree in enforcement of an otherwise valid pre-existing lien is not the judgment denounced by the statute...." *Metcalf Brothers, supra,* 187 U.S. at 174, 23 S.Ct. at 71. Based upon these propositions, the Court held that the creditors had acquired a lien upon the bankrupt's assets by the commencement of their action—not the final judgment—which was superior to the interest of the trustee. *Id.*

The possibility that the garnishor may be unsuccessful, following trial of the issues raised by the garnishment proceeding, does not diminish the lien rights it gained upon service of the garnishment summons. A judgment of garnishment does not create the garnishor's interest in the debtor's property in the hands of the garnishee. Instead, the judgment vindicates rights that were created upon service of the summons, by verifying that the lien was valid and did attach to debtor's property. *Matter of Latham,* 823 F.2d 108, 110–111 (5th Cir.1987). In the interim between service and judgment, no creditor on a simple contract could obtain a judicial lien superior to it. *In re Brinker,* 12 B.R. 936, 938 (Bankr. D.Minn.1981).

▮ Although one court has tentatively suggested that a garnishment lien is "perfected" upon service, see *Deetz, supra,* 403 N.E.2d at 1165, it does not seem that the Indiana appellate courts have ever been required to consider the competing priorities between a garnishment lien and a subsequent execution lien. Nonetheless, it is clear that the nature, origin, purpose and effect of the garnishment lien is the same as that considered by the Supreme Court in 1902. Accordingly, this court holds that, under Indiana law, a judgment creditor obtains a lien upon the judgment debtor's property in the possession of a garnishment-defendant upon service of the summons on the garnishee and that this lien cannot be defeated by a subsequent lien of execution which may issue before the garnishment proceeding is concluded.[2]

'The creditors whose legal diligence has continued to pursue the defendants' property into this Court, are entitled to a preference as the reward for their diligence.'

\* \* \* \* \* \*

---

**2.** "The perfection of a lien by garnishment is determined by the law of the state where the garnishment took place." *Latham, supra,* 823 F.2d at 110. Accordingly, the precise nature of the rights obtained by a garnishing plaintiff is determined by the significance each state gives to the different events which may occur during the garnishment process—issuance and service of the writ, the order and judgment of garnishment, and payment or transfer of the garnished property. Other jurisdictions which recognize that the garnishor obtains rights, which are perfected against being defeated by subsequent claimants, upon service of the summons include: Florida, *In re Harrington,* 70 B.R. 301, 305 (Bankr.S.D.Fla.1987); Georgia, *In re Conner,* 733 F.2d 1560, 1562 (11th Cir.1984); Hawaii, *In re Hallmark Properties, Inc.,* 22 B.R. 451, 452 (Bankr.D.Haw.1982); Illinois, *In re Warner Corp.,* 89 B.R. 751, 755–756 (Bankr.N.D. Ill.1988); *In re Dean,* 80 B.R. 932, 934 (Bankr.C. D.Ill.1987); *Matter of Einoder,* 55 B.R. 319, 325 (Bankr.N.D.Ill.1985); *In re Foluke,* 38 B.R. 298, 301 (Bankr.N.D.Ill.1984); *In re Lapiana,* 31 B.R. 738, 742–744 (Bankr.N.D.Ill.1983); Kansas, *In re Boden,* 61 B.R. 329, 331 (Bankr.D.Kan.1986); Kentucky, *In re Fagan,* 26 B.R. 212, 215 (Bankr. W.D.Ky.1982); Minnesota, *In re Brinker,* 12 B.R. 936, 938 (Bankr.D.Minn.1981); North Carolina, *In re Belk,* 26 B.R. 364 (Bankr.S.D.Fla.1982); Texas, *In re T.B. Westex Foods, Inc.,* 96 B.R. 77, 80–81 (Bankr.W.D.Tex.1989); and Wisconsin, *Matter of Woodman,* 8 B.R. 686, 687 (Bankr.W. D.Wis.1981).

[P]laintiffs, by instituting their proceedings under the statute to reach ·funds in the hands of [the garnishee], acquired a lien thereon, and were entitled to have their judgment first satisfied.... If, after the payment of plaintiffs' judgment, anything remained in the hands of [the garnishee], the other creditors, by instituting the proper proceedings, could reach it.... *Butler, supra*, 12 Ind. at 510–511 (quoting *Pierce v. Weed*, 9 Cow. 728).

Don Jacobs' interest in the proceeds recoverable on account of debtor's fraudulent conveyances to Herbert J. Weber and Advertising and Marketing Services, Inc. is superior to that of the bankruptcy trustee. *Accord In re Bell*, 55 B.R. 246 (Bankr.M.D. Tenn.1985).

 By themselves, neither the bankruptcy nor the automatic stay forever extinguish a creditor's right to recover property fraudulently conveyed by the debtor. *Carlton, supra*, 751 F.2d at 785. *See also Koch Refining, supra*, 831 F.2d at 1346–1347 n. 9. The ability is merely suspended, in order to give the trustee the opportunity to administer the asset and determine whether or not it should be pursued for the benefit of all.[3] The bankruptcy court has the discretion to lift the automatic stay "for cause" and to allow creditors to continue their own actions. 11 U.S.C. § 362(d)(1).

Here "cause" exists to terminate the automatic stay. Don Jacobs holds a perfected lien upon the proceeds of debtor's fraudulent conveyances in the hands of the garnishees, which is superior to the interest of the trustee. The outcome of the trustee's litigation against these garnishees cannot affect the validity of the rights movants obtained by instituting their own proceeding well prior to the bankruptcy. Should the trustee ultimately prove to be successful in his own action and recover the entire value of the fraudulent conveyances, Don Jacobs has the first claim upon those proceeds and will be entitled to have its judgment fully satisfied out of them, before any distribution could be ·made to other creditors. No reason has been advanced to suggest that allowing Don Jacobs to enforce its superior rights at this time will impede the administration of the estate or adversely impact upon the trustee's ability to prosecute and, if successful, collect the remaining value of the fraudulent conveyances for the benefit of debtor's other creditors.

An appropriate order will be entered.

---

3. Of course, if the trustee should decide to administer the asset and pursues the claim to a resolution on the merits, that resolution will bar creditors from subsequently asserting the same claim for their own benefit. *See In re American Hawk Enterprises, Ltd.*, 52 B.R. 395 (D.E.D.Va. 1985). This seems to be a natural conclusion based on the fact that the trustee pursues the claim for the benefit of all creditors.