In the Matter of FREEDOM GROUP, INCORPORATED, doing business as Metro Metals, Debtor.

FREEDOM GROUP, INCORPORATED, Plaintiff–Appellant,

v.

LAPHAM–HICKEY STEEL CORPORATION, Defendant–Appellee.

No. 94–3080.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1995.

Decided March 14, 1995.

James M. Lloyd (argued), Julia M. Pike, Michael V. Brodarick, Lloyd & McDaniel, Louisville, KY, for appellee.

John E. Brengle (argued), David M. Cantor, Seiller & Handmaker, New Albany, IN, for debtor-appellant.

Before POSNER, Chief Judge, CUDAHY, Circuit Judge, and GRANT, District Judge.*

POSNER, Chief Judge.

Freedom Group, a bankrupt, filed an adversary proceeding against Lapham–Hickey, seeking to undo what it claimed had been a preferential transfer resulting from a judicial seizure of Freedom Group's bank account. 11 U.S.C. § 547. The bankruptcy judge agreed with Freedom Group and ordered Lapham–Hickey to return the money, but the district court reversed, so the case comes to us on Freedom Group's appeal.

The facts were stipulated. On June 2 Lapham–Hickey obtained a judgment for $7,335.49 (plus interest and costs) against Freedom Group in an Indiana state court.

---

* Hon. Robert A. Grant of the Northern District of Indiana.

Ten days later, the court entered an order called a "notice of garnishment" in favor of Lapham–Hickey, and on June 15 Lapham–Hickey served the order on Freedom Group's bank. The balance in Freedom Group's bank account that day was only $108.25. But on the next day Freedom Group deposited $18,000 in the account. On the following day—June 17, 1992—the state court entered a final order of attachment ( = garnishment), directing the bank to pay any and all money in Freedom Group's account up to the limit of the judgment. In compliance with this order, the bank cut a check to Lapham–Hickey for $7,743.11 (the difference between that amount and the amount of the judgment representing, we assume, interest). Freedom Group declared bankruptcy on September 14, 1992. The sequence, then, was: judgment; notice of garnishment issued; notice of garnishment served on bank; bank account augmented by large deposit; final order of attachment (equivalently, of garnishment) entered; bank pays creditor, pursuant to that final order; debtor declares bankruptcy.

June 15, the day the notice of garnishment was served on the bank, was the ninety-first day before the declaration of bankruptcy. June 16, the day the $18,000 was deposited in Freedom Group's bank account, was the ninetieth day before the bankruptcy. June 17, the day the final order of attachment was issued, was the eighty-ninth day before the bankruptcy. If the transfer of the $7,743.11 occurred within 90 days of the bankruptcy—that is, occurred anytime after June 15—it is avoidable; otherwise not. A preferential transfer is avoidable only if made within 90 days before bankruptcy was declared. 11 U.S.C. § 547(b)(4)(A).

■ The Bankruptcy Code defines "transfer" broadly, as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property," 11 U.S.C. § 101(54), and provides, so far as bears on this case, that a preferential transfer "is made ... at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time." 11 U.S.C. § 547(e)(2)(A). But although the Code defines transfer and specifies when a transfer is made—thus making whether and when a transfer occurs issues of federal law, *Barnhill v. Johnson*, 503 U.S. 393, 397–98, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992)—it looks to state law for the definition of "property" and "interest in property." *Id.* at 397–98, 112 S.Ct. at 1389; *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 370, 65 S.Ct. 405, 408, 89 L.Ed. 305 (1945). Under Indiana law a notice of garnishment not only prevents the debtor from withdrawing the funds in his bank account but also gives the judgment creditor who procured the notice a lien against the funds up to the amount of the judgment. *Lakeshore Bank & Trust Co. v. United Farm Bureau Mutual Ins. Co.*, 474 N.E.2d 1024, 1026–27 (Ind.App.1985); *Deetz v. McGowan*, 403 N.E.2d 1160, 1165 (Ind. App.1980). A lien is a property interest, and it was acquired by Lapham–Hickey. The funds themselves were not transferred to Lapham–Hickey. They were merely frozen, until the final order of attachment was issued and complied with—and if the transfer did not occur until then, it came too late for Lapham–Hickey to avert a finding of preferential transfer. Lapham–Hickey argues, however, that a "transfer" within the meaning of the Bankruptcy Code is any mode of disposing of an interest in property; a lien—a right to satisfy a judgment out of specific property (here, Freedom Group's bank account)—is an interest in that property; that right was "disposed of" to Lapham–Hickey by the notice of garnishment; therefore the transfer occurred before the ninety-day portcullis descended. It is a nice, tidy, "logical" argument but so manifestly contrary to the purpose of the statute as to incite grave doubts, at least in judges who are not in thrall to the syllogistic style of legal reasoning.

■ The purpose of allowing preferential transfers to be set aside is to prevent debtors who are tottering toward bankruptcy from playing favorites among their creditors, trying to keep alive a little longer by placating the most importunate ones. The reason for worrying about this favoritism is that the possibility of it makes creditors less likely to forbear—more likely to insist on immediate

payment—and, if immediate payment is not forthcoming, to sue and obtain judgments, thus increasing the costs to all creditors, retarding an orderly liquidation, and hurrying the debtor into bankruptcy faster than if creditors did not have to fear each other. *In re Taxman Clothing Co.,* 905 F.2d 166, 169 (7th Cir.1990); *Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890, 892 n. 1 (7th Cir.1988); Thomas H. Jackson, *The Logic and Limits of Bankruptcy Law* 14–17, 128 (1986); Douglas G. Baird, *The Elements of Bankruptcy* 165–66 (rev. ed. 1993). The statute reduces the debtor's ability to play favorites, and hence the anxiety of creditors, and hence the costly melee that such anxiety can engender, by telling the favored creditor that if the debtor goes broke within ninety days after the transfer, the transfer will be undone and the favored creditor tossed back in the pool with the rest of the creditors.

The position for which Lapham–Hickey contends undermines this policy in two ways. The first has to do with the continuing character of the notice of garnishment. The notice does not freeze just the amount of money in the garnished bank account on the date of the notice. It freezes any increments up until the service of the final order of attachment. When that order is served, the judgment creditor becomes entitled to whatever money has accumulated in the account, up to the level of the judgment. How much that shall be is within the debtor's discretion to decide. Freedom Group did not have to deposit $18,000—or 1¢—in its bank account after the notice of garnishment was issued. That was a decision made (or effectuated) by Freedom Group within ninety days of declaring bankruptcy, and thus during the period of avoidable preferences. The effect was to put one of its creditors, the one that had succeeded in garnishing its bank account, ahead of the others—and that is just the sort of thing that the preferential-transfer statute is intended to prevent. Compare Jackson, *supra,* at 145.

Lapham–Hickey argues that even though it did not pocket the $18,000 until after the ninety-day countdown to bankruptcy began, the transfer relates back to the ninety-first day, the day of the notice of garnishment, because the notice "perfected" Lapham–Hickey's claim to the contents of Freedom Group's bank account. But perfection and transfer are distinct concepts, as is plain from the provision of the Code that we quoted earlier on the timing of a preferential transfer. "Perfection" refers to the priority of rights among creditors. *Global Distribution Network v. Star Expansion Co.,* 949 F.2d 910, 913 (7th Cir.1991), disapproved on other grounds in *Barnhill v. Johnson, supra,* 503 U.S. at 396 n. 3, 112 S.Ct. at 1388 n. 3. The notice of garnishment perfected Lapham–Hickey's lien in the sense of putting that lien ahead of any other lien that a creditor of Freedom Group's might attempt to assert against the bank account; first in time, first in right—and the relevant time is when the notice of garnishment is served. *Radiotelephone Co. of Indiana, Inc. v. Ford,* 531 N.E.2d 238, 240–41 (Ind.App.1988); *In re U.S. Marketing Concepts, Inc.,* 113 B.R. 487, 493 and n. 2 (Bankr.N.D.Ind.1990). The preference-avoidance provision of the Bankruptcy Code is not concerned with the order of liens on Freedom Group's bank account. It is concerned with preventing the debtor from picking and choosing among creditors. Freedom Group picked and chose within the preference period when it decided to deposit money in an account controlled by one of its creditors.

The second way in which Lapham–Hickey's position undermines the purposes of preference avoidance arises from the tentative nature of a notice of garnishment, and shows that Lapham–Hickey is not entitled to keep even the $108.25 that was in the bank account when the notice was served. The notice of garnishment is like a preliminary injunction. Cf. *Pride Shipping Corp. v. Tafu Lumber Co.,* 898 F.2d 1404, 1407–08 (9th Cir.1990). It seeks to protect a creditor against the irreparable harm that will ensue if the debtor dissipates funds needed to pay the creditor. It does this by freezing funds owed to the debtor (as by the bank that was the garnishee in this case), so that they will be available to the creditor if and when he establishes his right to them. But the notice does not itself establish that right. It merely

gives him a breathing space in which to establish it. In this case, that did not take long—just two days. But until the two days were up, there was some chance that the creditor, Lapham–Hickey, would not get the funds after all. See Ind.Code §§ 28–9–3–5(b), 28–9–4–2(b). There might be another creditor ahead of it; there might be some serious defect in the judgment; the judgment might not be against this debtor; the garnishee might not be holding funds owed to the debtor; and so forth. Suppose the debtor wanted this creditor to get his money. The debtor might decide not to interpose valid defenses to the garnishment. This decision might come, or take effect, well into the preference period. The effect would be, within that period, to favor one creditor over another.

We are mindful of the flock of cases which equate perfection to transfer for purposes of applying the preference-avoidance provision—indeed which hold specifically that a transfer occurs within the meaning of the Code when a notice of garnishment is served. *In re Battery One–Stop Ltd.*, 36 F.3d 493, 494–98 (6th Cir.1994); *In re Latham*, 823 F.2d 108 (5th Cir.1987) (per curiam); *In re Conner*, 733 F.2d 1560, 1562 (11th Cir.1984); *Walutes v. Baltimore Rigging Co.*, 390 F.2d 350 (4th Cir.1968); *In re Aztec Concrete, Inc.*, 143 B.R. 537, 540 (Bankr.S.D.Ia.1992); *In re Arnold*, 132 B.R. 13 (Bankr.E.D.Mich. 1991); *In re Brinker*, 12 B.R. 936 (Bankr. D.Minn.1981); but see *In re McCoy*, 46 B.R. 9 (Bankr.D.Ariz.1984). All but one of these cases, however, were decided before the Supreme Court's decision in *Barnhill v. Johnson, supra,* and in our view do not survive that decision. The issue in *Barnhill* was whether a transfer within the meaning of the preferential-transfer provision of the Code— the provision at issue in our case, as well as in the cases we have just cited—occurred when the debtor delivered his check to the creditor or not until the bank on which the check was drawn honored the check; and the Court held that it was the latter, because "myriad events can intervene between delivery and presentment of the check that would result in the check being dishonored." 503 U.S. at 399, 112 S.Ct. at 1390; see also *id.* at 400–02, 112 S.Ct. at 1391. The same thing is true here. Between the service of the notice of garnishment, corresponding to the delivery of a check, and the final order of attachment, corresponding to the bank's decision to honor (pay) the check, all sorts of events might intervene that would prevent the creditor from obtaining payment.

Many of the cases rely on 11 U.S.C. § 547(e)(2)(B), which provides, as an alternative time at which a preferential transfer occurs, "the time such transfer is perfected, if such transfer is perfected after 10 days." But this provision is intended for the case in which the transfer occurs first, and is later perfected. Here we had perfection, but no transfer until the right of the favored creditor to the money was determined, which took place within the 90-day preference period.

Naturally we are given pause by the Sixth Circuit's decision in *In re Battery One–Stop Ltd., supra,* because it was decided after *Barnhill.* But it failed even to cite, let alone attempt to distinguish, *Barnhill,* and it does not discuss, let alone alleviate, our concern that treating the service of the notice of garnishment as the transfer would undermine the policy behind the preference-avoidance provision. It does not discuss that policy.

We conclude that a garnishment or attachment does not transfer money or other property to a creditor, for purposes of determining whether the transfer is an avoidable preference, until a final order of garnishment or attachment is issued. Until then, the transfer is tentative, its amount uncertain, and control or influence retained by the debtor to be used possibly to play favorites among his creditors. The judgment is therefore reversed with instructions to grant judgment to Freedom Group.

Because our decision creates an intercircuit conflict, we have circulated it to the full court pursuant to 7th Cir.R. 40(f). No one voted to hear the case en banc.

REVERSED.