In re Arcy Michelle PERDEW.

Arcy Michelle PERDEW, Plaintiff,

v.

FIRST OF AMERICA, N.A., Defendant.

Bankruptcy No. 97–3451–RLB–7.
Adversary No. 97–156.

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

July 14, 1998.

John Thrasher, Indianapolis, IN, for plaintiff/debtor.

James A. Knauer, Mary E. Brown, Kroger, Gardis & Regas, Indianapolis, IN, for defendant.

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

ROBERT L. BAYT, Bankruptcy Judge.

This matter is before the Court on the Motion for Summary Judgment ("Motion for Summary Judgment") filed by First of America Bank, N.A. (the "Bank") on May 21, 1998.

Arcy Michelle Perdew ("Debtor") filed a response to the Motion for Summary Judgment ("Response") on June 2, 1998. The Bank filed a reply ("Reply") on June 18, 1998. The Court, having reviewed the Motion for Summary Judgment, the Response, the Reply, and the briefs and affidavits of the parties, now makes the following Entry.[1]

The Debtor filed a petition under Chapter 7 on March 31, 1997. The complaint that initiated the instant adversary proceeding was filed by the Debtor on April 15, 1997. On August 8, 1997, the Debtor filed her First Amended Complaint for Damages Resulting From Contempt of the Stay Order, and on August 29, 1997, the Debtor filed her Second Amended Complaint for Damages Resulting From Contempt of the Stay Order (the "Second Amended Complaint").[2]

The Debtor's core allegation against the Bank concerns the Bank's handling of a freeze on the Debtor's bank account (the "Debtor's Account"). The Debtor alleges that the Bank violated the automatic stay when the Bank did not lift the freeze on the Debtor's Account immediately after becoming aware of the Debtor's bankruptcy filing. In the Motion for Summary Judgment, the Bank alleges that it is entitled to judgment that it did *not* violate the automatic stay in its handling of the Debtor's Account.

### The Facts

The Debtor filed her bankruptcy petition on March 31, 1997. On March 24, 1997, one week prior to the Debtor's bankruptcy filing, an employee of the Bank, Pamela S. Coleman ("Ms. Coleman"), received a garnishment of the Debtor's Account. She immediately placed a "hard hold" on the Debtor's Account. *See* Coleman Affidavit, paragraph 9. In a letter from the Bank to the Debtor dated March 24, 1997, the Bank advised the Debtor that it would "be unable to honor any checks outstanding or withdrawals" against the Debtor's Account. *See* Attachment D to Document 39.

On Wednesday, April 2, 1997, Ms. Coleman received notice of the Debtor's bankruptcy filing via facsimile transmission.[3] *See* Coleman Affidavit, paragraph 13. Ms. Coleman contacted the attorney for the judgment creditor, advised him of the bankruptcy filing, and requested a release of the garnishment order. *See* Coleman Affidavit, paragraph 13.

On Saturday, April 5, 1997, the state court entered an order directing the Bank to release the hold on the Debtor's account (the "State Court's April 5 Order"). *See* Attachment I to Document 39. On Monday, April 7, 1997, Ms. Coleman received via facsimile transmission a copy of the State Court's April 5 Order. *See* Coleman Affidavit, paragraph 15. On the same date that Ms. Coleman received a copy of the State Court's April 5 Order, *i.e.*, April 7, 1997, Ms. Coleman deleted the "hard hold" on the Debtor's Account, credited the Debtor's Account for the amount withheld, and filled out a "checking credit" to evidence the transaction. *See* Coleman Affidavit, paragraph 15.

---

1. On February 26, 1998, the Debtor filed a Motion for Leave to Amend Her Complaint to Join Additional Defendants, and filed a Motion to Join Additional Parties Defendants. The motion for leave to amend and motion to join are addressed in a separate opinion being issued concurrently herewith.

2. In the Second Amended Complaint, the Debtor asks the Court to make the following findings:
WHEREFORE the Debtor, by counsel, pleads for a judgment in her favor and against the Defendant Bank:
a) finding the Defendant in willful contempt of the Court's stay order;
b) assessing nominal, consequential, and intangible damages against the Defendant in the amount of $7,592.00;

c) from that figure, assessing punitive damages against the Defendant under Federal law in an amount that will keep the Defendant from committing the same act against other Debtors;
d) Charging the Defendant with the Debtor's reasonable, contingency legal fees of one-third; and
d) [sic] granting all other just and proper relief.

3. There is some dispute as to the exact date on which the Bank received notice of the Debtor's bankruptcy filing. Given the Court's decision hereinunder, the issue of whether the Bank received notice of the bankruptcy filing on April 2, 1997, or on an earlier date, is not outcome determinative.

### The Standard for Summary Judgment

Summary judgment is properly granted where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Bankruptcy Rule 7056, adopting by reference Federal Rule of Civil Procedure 56; *The Pantry, Inc. v. Stop–N–Go Foods, Inc.*, 777 F.Supp. 713, 726 (S.D.Ind.1991).

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The ultimate burden of demonstrating the existence of a genuine issue of material fact, however, lies with the party resisting summary judgment. *Celotex*. The United States Supreme Court has explained the shifting burden as follows:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The mere existence of a factual dispute is not, standing alone, sufficient to bar summary judgment. A factual dispute does not prevent summary judgment unless the disputed fact is outcome determinative. Irrelevant or unnecessary disputed facts do not preclude entry of summary judgment. *Kaken Pharmaceutical Co., Ltd. v. Eli Lilly and Co.*, 737 F.Supp. 510, 515 (S.D.Ind.1989).

### The Bank's Argument That it Did Not Violate the Automatic Stay

11 U.S.C. Section 362(a) provides that the following actions constitute a violation of the automatic stay:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commence of the case under this title....

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

> (3) any action to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

> (4) any act to create, perfect, or enforce any lien against property of the estate;

> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secured a claim that arose before the commencement of the case under this title;

> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

> (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

> (8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

The Debtor alleges that the Bank violated the automatic stay when it failed to release the freeze on the Debtor's Account immediately after becoming aware of the Debtor's bankruptcy filing.[4]

The Court turns first to the Indiana law concerning the garnishment of bank accounts. Pursuant to Indiana Code Section 28–9–4–2, once the Bank received notice of the judgment creditor's money judgment, the Bank was *required* to place a hold on the Debtor's Account:

> (a) Upon receipt from an adverse claimant who is a money judgment creditor of the documents and process required under IC 28–9–3–4(d), a depository financial institution shall:

---

**4.** Because the hold was initially placed on the Debtor's Bank Account on March 24, 1997, one week prior to the date of the Debtor's bankruptcy filing, it is undisputed that the initial freezing of the account was not a violation of the automatic stay.

. . . .

(2) within a commercially reasonable time after receiving the documents and process, restrict withdrawal of the funds in the deposit account identified in the documents and process. . . .

■ Once the garnishment summons was served on the Bank, the judgment creditor, Dr. George W. Hicks, M.D. (hereinafter the "Judgment Creditor"), obtained a lien against the funds on deposit in the Debtor's Bank Account. As the Seventh Circuit explained in *Matter of Freedom Group, Inc.*, 50 F.3d 408 (7th Cir.1995),

Under Indiana law a notice of garnishment not only prevents the debtor from withdrawing the funds in his bank account but also gives the judgment creditor who procured the notice a lien against the funds up to the amount of the judgment.

*Freedom Group*, 50 F.3d at 410.

■ Once the Judgment Creditor's lien attached to the Debtor's Account, the Bank could not release the hold on the Debtor's Account unless the Debtor obtained one of the following: one, authorization from the Judgment Creditor to release the hold; two, an order from the state court to release the hold, or three, an order from the bankruptcy court to release the hold.[5]

Once the lien has attached, without the permission of the [judgment creditor] or an order of the court, neither the judgment debtor not the garnishee [here, the Bank] can take any action with regard to the property in question which can defeat the judgment creditor's interest in it. . . . Instead, the lien continues until it has been satisfied.

*Matter of U.S. Marketing Concepts, Inc.*, 113 B.R. 487, 492 (Bankr.N.D.Ind.1990). Had the Bank lifted the hold on the Debtor's account immediately upon learning of the Debtor's bankruptcy filing, and prior to receiving a state court order to lift the hold, the Bank could have been forced to pay the garnished funds twice, once to the Debtor, and once to the Judgment Creditor. *Matter of U.S. Marketing*, 113 B.R. at 492.

The Judgment Creditor's lien was not avoided by the filing of the Debtor's bankruptcy petition. Contrary to the Debtor's assertion, the Bank could not unilaterally lift the hold on the Debtor's Account, simply because the Bank became aware that the Debtor had filed a bankruptcy petition.

When the Bank received a copy of the State Court's April 5 Order on April 7, the Bank immediately lifted the hold on the Debtor's Account. Although the parties dispute some of the peripheral facts before the Court, the one, outcome-determinative fact is not in dispute: the Bank acted promptly to lift the hold on the Debtor's Account once the Bank received a copy of the State Court's April 5 Order.

■ Pursuant to the foregoing, it is the conclusion of the Court that neither the imposition of the hold on the Debtor's account, nor the Bank's inability to remove the hold until April 7, 1997, constitutes a violation of the automatic stay. The United States Supreme Court has held that an administrative hold does not constitute a set off within the meaning of Section 362(a)(7), and does not constitute a violation of Section 362(a)(3) or (a)(6). *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). Nothing that the Bank did could qualify as a violation of the stay pursuant to Section 362(a)(1), (2), (4), (5), or (8). Accordingly, there being no material facts in dispute, the Bank is entitled to judgment as a matter of law that it did not violate the automatic stay in its handling of the freeze on the Debtor's Account.

### The Debtor's Argument That There are Material Issues of Fact

In the Debtor's Response filed on June 2, 1998, the Debtor's argues that summary judgment should not be granted to the Bank, because:

There are still genuine issues of material fact left to resolve.

The first is whether the contract on which the Bank relies was valid and can be enforced against the [Debtor].

**5.** The Debtor did not petition the bankruptcy court for an order to release the hold.

The second is whether the Bank was obligated to, and whether it did, act with reasonable dispatch to honor the Stay Order.

Response, page 8.

When the Debtor first opened her bank account with the Bank, she signed an agreement (the "Account Agreement") that set out the terms pursuant to which the account would be maintained. The Account Agreement provides, *inter alia*, that if the Bank Account were to become involved in a legal proceeding, the Debtor's use of the Bank Account might be restricted.

> If your account is involved in a legal proceeding, including a garnishment or other levy, your use of it may be restricted. We may refuse to pay out any money from the account until the dispute is resolved.

Attachment B to Document 39, Account Agreement, page 2.

In the Debtor's Response, the Debtor makes several arguments concerning the enforceability of the Account Agreement,[6] all of which are irrelevant to the issues before the Court. The resolution of the instant case is controlled by Indiana law concerning garnishment and the duties imposed on a garnishee-defendant, and is *not* controlled by the terms of the Account Agreement. Whatever the terms of the Account Agreement were, the Bank was required to freeze the Debtor's Account upon receiving the garnishment order from the state court.

Secondly, the Debtor argues in the Response that there is a material issue of fact as to whether the Bank acted with "reasonable dispatch" in releasing the hold on the Debtor's Account. Contrary to the Debtor's assertion, there is no material issue of fact as to whether the Bank acted with reasonable dispatch. The Bank could not have released the hold on the Debtor's Account prior to receiving a copy of the State Court's April 5 Order. The Bank did release the hold on the Debtor's Account on the first available business day after the State Court's April 5 Order was entered.[7]

■ The Debtor points to two sets of facts to support her assertion that there is a material issue of fact: first, the Debtor argues that Ms. Coleman's memory is faulty concerning an alleged April 2, 1997 conversation between herself and counsel for the Debtor; and secondly, the Debtor argues that based on the fact that the Judgment Creditor and the Bank had facsimile machines, the parties could have acted more quickly to release the hold on the Debtor's Account. Neither argument by the Debtor raises a *material* issue of fact. The alleged April 2, 1997 conversation between counsel for the Debtor and Ms. Coleman, is irrelevant to the Court's decision today. The fact that the parties had facsimile machines is similarly irrelevant. Even if the Bank had received a facsimile copy of the State Court April 5 Order on April 5, 1997 (as opposed to receiving it on April 7, 1997), the Court would still hold as a matter of law that the Bank acted with reasonable dispatch when it lifted the hold on the Debtor's Account on the next available business day, Monday, April 7, 1997.

For all the foregoing reasons, it is the conclusion of the Court that the Debtor's arguments concerning the existence of a material issue of fact are not meritorious. The Bank is entitled to summary judgment as a matter of law.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Bank's Motion for Summary Judgment be, and hereby is, GRANTED. The Court hereby HOLDS that the Bank did not violate 11 U.S.C. Section 362(a) by waiting until April 7, 1997, to lift the hold on the Debtor's Account.

---

6. The Debtor argues that the Account Agreement is unenforceable against the Debtor because: 1) there was "no meeting of the minds"; 2) the Account Agreement is unconscionable; 3) the terms of the Account Agreement were not communicated to the Debtor; and 4) the Account Agreement is "illusory".

7. April 5, 1997, was a Saturday, and April 7, 1997, was the first available business day during which the Bank could have released the hold on the Debtor's Account.