United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 17, 2004**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

Cause No. 03-51252
_____


In The Matter Of: SHAILESH GUPTA

Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHAILESH GUPTA,

Appellant,

versus

EASTERN IDAHO TUMOR INSTITUTE, INC.,

Appellee.

---

Appeal from the United States District Court
for the Western District of Texas

---

Before REAVLEY, JONES, and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Dr. Shailesh Gupta sought Chapter 7 bankruptcy relief after a judgment was obtained against him in Texas state court for his "breach of fiduciary duty" against a co-joint venturer. The question before this court is whether collateral estoppel applies to bar relitigation of the facts and to compel a conclusion that the judgment was a non-dischargeable debt for "fraud or defalcation while acting in a fiduciary capacity. . ." 11 U.S.C. § 523(a)(4). Contrary to the bankruptcy and district courts, we hold that

collateral estoppel was inappropriate, and must reverse and remand for further proceedings.

## I.   BACKGROUND

On September 1, 1995, Northwest Houston Radiation Medical Group Limited ("Northwest") entered into a Joint Venture Agreement ("Agreement") with Dr. Gupta ("Gupta") to operate a radiological clinic.  The initial term of the joint venture was to be twelve months.  Gupta was responsible for medical and professional staffing, while Northwest contributed all necessary equipment, office space and machinery.  Gross revenues were to be divided equally between the parties.  While Gupta was responsible for billing for services, that function was to be performed "at the direction and supervision of Northwest. . . ."  Finally, each party was to share in the management of the business, and all non-medical decisions required the partners' unanimous agreement.  The venture lapsed when the parties failed to renew their Agreement before its expiration date.  Gupta, however, remained on the property, conducted the same business, and retained all revenues collected for more than a year.[1]

---

[1]     Although the preamble provides that the Agreement is created under California law, ¶18 of the Agreement states that "[t]he laws of the State of Texas shall govern the interpretation of this agreement."  Because the issue before us regards legal interpretation of fiduciary capacity as determined by the parties' duties to one another under the Agreement, Texas law will apply.

2

In 1997, Eastern Idaho Tumor Institute, Inc. ("Eastern Idaho"), as successor in interest to Northwest, sued Gupta in state court alleging, in part, breach of fiduciary duty for Gupta's failure to remit a fifty percent share of gross revenues to Eastern Idaho. After a three-day trial, the jury found against Gupta and awarded Eastern Idaho over $250,000 in damages. The jury specifically found that: (1) Gupta breached the Agreement by failing to remit half the gross revenues to Eastern Idaho; (2) "a relationship of trust and confidence" existed between Gupta and Eastern Idaho; (3) Gupta breached a fiduciary duty to Eastern Idaho created by virtue of the Agreement;[2] and (4) Gupta failed to pay rent while he occupied the premises after the Agreement expired. Gupta not only appealed the judgment to the state appellate court, but he also filed for Chapter 7 bankruptcy.

Eastern Idaho commenced an adversary proceeding to determine the non-dischargeability, under 11 U.S.C. § 523(a)(4), of

---

[2] There is a dispute regarding whether the jury verdict form, specifically Question No. 4, inappropriately shifted the burden of proving breach to Gupta. Specifically, at oral argument, a panel member asked whether the litany of compliance requirements in Question No. 4 "precede determination of fiduciary . . . or do they follow it." Audio Tr. (August 30, 2004). While the ultimate burden to prove breach rests with the plaintiff, once a fiduciary duty is established, the fiduciary is then burdened with proving compliance with the duty. Tex. Bank & Trust Co. v. Moore, 595 S.W.2d 502, 509 (Tex. 1980). Question No. 4 reflects this shift. In response to Question No. 3, the jury found that a relationship of trust and confidence existed, which supports a finding of fiduciary duty under Texas law. The jury was then tasked with determining whether Gupta complied with his duty in Question No. 4, which shifted the burden of demonstrating compliance to Gupta. We think that this was proper. Even if the burden shifting was incorrect, it does not affect the narrow question before this court, which is whether the state law fiduciary duty found in response to Question No. 3 and, arguably, presumed in Question No. 4, is sufficient to support a fiduciary finding under 11 U.S.C. §523(a)(4).

3

approximately one-fourth of the judgment, <u>i.e.</u>, that part which was attributable to the findings of breach of fiduciary duty. The bankruptcy court agreed that the state jury's findings are entitled to preclusive effect on the federal claim. Gupta appealed to the district court, which affirmed.

Gupta now appeals to this court, contending that the state court findings did not effectively determine the dischargeability of this portion of the judgment under § 523(a)(4) of the Bankruptcy Code. We agree.

## II.  STANDARD OF REVIEW

This court reviews a bankruptcy court's decision to give preclusive effect to a state court judgment de novo, and its findings of fact under a clearly erroneous standard. <u>Gober v. Terra + Corp. (In re Gober)</u>, 100 F.3d 1195, 1201 (5th Cir. 1996).

## III.  ANALYSIS

A bankruptcy court may apply collateral estoppel in a dischargeability proceeding to preclude relitigation of state court findings that are relevant to dischargeability. <u>See</u> <u>Schwager v. Fallas (In re Schwager)</u>, 121 F.3d 177, 181 (5th Cir. 1997) (citing <u>Grogan v. Garner</u>, 498 U.S. 279, 285 n.11, 111 S.Ct. 654, 658 n.11, 112 L.Ed.2d 755 (1991)). The ultimate determination of dischargeability is, however, a federal question. As we have elaborated, "The scope of the concept of fiduciary under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is

4

important in determining whether or not a trust obligation exists." _LSP Inv. Partnership v. Bennett (In re Bennett)_, 989 F.2d 779, 784 (5th Cir. 1993) (relying on _Angelle v. Reed (In re Angelle)_, 610 F.2d 1335, 1335-41 (5th Cir. 1980)).  The problem in this case is how to interpret the jury's finding of a breach of fiduciary duty in light of Texas partnership law and this circuit's interpretation of the federal standard.

Bankruptcy law has consistently rendered non-dis-chargeable debts that arise from "fraud or defalcation while acting in a fiduciary capacity. . . ."  11 U.S.C. § 523(a)(4).  Justice Cardozo explained a predecessor provision as follows:

> It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee _ex maleficio_.  He must have been a trustee before the wrong and without reference thereto.

_Davis v. Aetna Accept. Co._, 293 U.S. 328, 333, 55 S.Ct. 151, 154, 79 L.Ed. 393 (1934).  _Davis_ goes on to hold that a debtor was not a trustee "in that strict and narrow sense," _id._, when he allegedly converted property subject to the creditor's security interest. Implementing _Davis_, this court has held that a trust relationship imposed by Louisiana statute on the dealings between a homebuilder and his customers was, on the facts presented, insufficient to establish a non-dischargeable breach of fiduciary duty.  _Angelle_, 610 F.2d at 1335-41.  The court emphasized that a trust must exist "prior to the wrong and without reference to it," _id._ at 1340, in order to constitute a "technical trust" within the non-

5

dischargeability provision.[3] This court has, on the other hand, not hesitated to conclude that debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity, as understood by state law principles, are non-dischargeable. Thus, debts of corporate officers to the corporation or a minority shareholder have been held non-dischargeable, as have the debts of a managing partner of a limited partnership to the limited partners. <u>Moreno v. Ashworth (In re Moreno)</u>, 892 F.2d 417, 421 (5th Cir. 1990); <u>Bennett</u>, 989 F.2d at 791; <u>Sheerin v. Davis (In re Davis)</u>, 3 F.3d 113, 117 (5th Cir. 1993).

In <u>Bennett</u>, we noted a split among lower court decisions and declined to rule on whether co-equal partners hold duties to each other that are "fiduciary" for purposes of § 523(a)(4) non-dischargeability. Since <u>Bennett</u> was decided, two circuits have held debts of a partner toward fellow partners or the partnership non-dischargeable on this ground. <u>Lewis v. Scott (In re Lewis)</u>, 97 F.3d 1182, 1189 (9th Cir. 1996); <u>Laughter v. Speight (In re Speight)</u>, 16 F.3d 287, 287 (8th Cir. 1994). No circuit court has held to the contrary. 3 NORTON BANKR. L. & PRAC. 2D § 47:28 (2004).

The bankruptcy court here attempted to simplify this case and to bring it within <u>Bennett</u> by finding that Dr. Gupta was essentially a managing partner of the party's joint venture.

---

[3]     Technically, <u>Angelle</u>, like <u>Davis</u>, interprets § 17(a)(4) of the Bankruptcy Act, rather than §523(a)(4) of the 1978 Bankruptcy Code, but the provisions are materially indistinguishable.

Unfortunately, no such "finding" was litigated or made in the state court proceedings, and, collateral estoppel cannot attach to a non-existent finding.[4] The evidence in the record before us, moreover, tends to suggest just the opposite: That Gupta and Eastern Idaho managed the venture jointly, each with special spheres of responsibility but with unanimity required in many decisions. Not only are we not bound by the state court finding, but for present purposes, we may not assume Gupta was equivalent to a managing partner.

Gupta's precise role, whether as the manager or simply a co-venturer, would be irrelevant if all partners are fiduciaries to each other for purposes of § 523(a)(4). Texas law, however, fails to support that broad proposition. Rules governing the internal management of joint ventures in Texas follow those applicable to partnerships. TEX. REV. CIV. STAT. ANN. ART. 6132b-2.02(a). Texas partnership law was significantly amended in 1994, before the events giving rise to this case, to refine the nature and scope of partners' duties to each other. The amendment replaced a section formerly titled "Partner Accountable as Fiduciary"[5] with the following:

---

[4] Texas state rules governing collateral estoppel apply here. Schwager, 121 F.3d at 181. Pursuant to Texas law, collateral estoppel may be applied where (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. Sysco Food Servs. Inc. v. Trapnell, 890 S.W.2d 796, 801 (Tex. 1994).

[5] TEX. REV. CIV. STAT. ANN. ART. § 6132b, § 21 (1970).

7

> Trustee Standard Inapplicable. A partner, in that capacity, is not a trustee and is not held to the same standards as a trustee.

TEX. REV. CIV. STAT. ANN. ART. 6132b-4.04(f). The State Bar Committee Official Comment explains, "This section defines partnership duties and implies that they are not to be expanded by loose use of 'fiduciary' concepts from other contexts or by the rhetoric of some prior cases." TEX. REV. CIV. STAT. ANN. ART. 6132b-4.04, cmt.[6]

This is not to say that Texas partners no longer owe special duties to each other. The same provision defines duties of loyalty and care, together with obligations to discharge those duties in good faith and in the best interests of the partnership. TEX. REV. CIV. STAT. ANN. ART. 6132b-4.04(a),(b),(c),(d). The duty of loyalty expressly includes that of accounting to the partnership and holding and using property or money for its benefit during the partnership's existence and its winding up. Id. Under these provisions, certain duties that partners owe to each other may rise to the level of a "fiduciary" for purposes of § 523(a)(4).[7] The Texas Supreme Court has taken note of the statutory change, and the fact that the principles as applied to the case before it had not

---

[6] The commentary goes on to explain that subsection (f) further attempts "to restrict reliance on the unfortunate language of prior law. The term 'fiduciary' is inappropriate when used to describe the duties of a partner because a partner, unlike a true trustee, may legitimately pursue the partner's own self-interest and not solely the interests of fellow partners or the partnership."

[7] In Angelle, this Court stated that the only possible way Angelle could be considered a fiduciary was if Louisiana law imposed trust-like duties on contractors in his position. 610 F.2d at 1341.

8

changed (i.e., no duty to offer former partners a business opportunity arising after the partnership terminated), in M.R. Champion, Inc. v. Mizell, 904 S.W.2d 617 (Tex. 1995). The Court also cited the revised statute for the proposition that, "Partners owe each other and their partnership a duty in the nature of a fiduciary duty in the conduct and winding up of partnership business . . . ." Mizell, 904 S.W.2d at 618 (emphasis added). It would appear that, at least as to the duty to account for money owed to the partnership, a partner's duties may constitute a pre-existing, express or technical trust within the meaning of the Supreme Court's Davis decision and the Fifth Circuit's Angelle decision and are analogous to those of the corporate officers in Davis and Moreno cases. We need not speculate on the subject of partners' duties further here, however.

The jury findings concerning Gupta's relationship of trust and confidence to Eastern Idaho must be viewed through the lens of federal law as well as the modified Texas partnership standards. Angelle, of course, held that a relationship involving confidence, trust and good faith is "far too broad" to satisfy the federal standard. Angelle, 610 F.2d at 1341. Further, the jury's finding of Gupta's fiduciary duty was predicated solely on "a relationship of trust and confidence." The jury's separate finding of a breach of fiduciary duty was based on general phrases concerning the duty (e.g., to conduct transactions that were "fair and equitable" to Eastern Idaho), rather than on specific events or

9

actions that might fall within the parameters of the amended statute. Finally, there is no way to tie the damages found for breach of fiduciary duty back to specific instances of Gupta's misconduct that might correlate with Texas's amended statute or the federal standard.[8]

In short, the state court findings are insufficient to warrant collateral estoppel here, because they are based on a standard that <u>Angelle</u> held insufficient, and they do not indicate that the facts actually litigated and decided comport with those limited areas of responsibility that still may be deemed "fiduciary" under Texas partnership law. As in <u>Schwager</u>, we confront findings that are insufficiently precise to govern the dischargeability determination for federal purposes.

### CONCLUSION

Accordingly, the bankruptcy court's summary judgment in favor of Eastern Idaho, affirmed by the district court, must be reversed, and the case remanded for further proceedings.

**REVERSED** and **REMANDED.**

---

[8] The jury separately found damages based on (a) Gupta's breach of the Agreement by failing to account for half the gross revenues; (b) lost rental value of medical equipment; and (c) lost premises rent.

10