In the Matter of Kevin P. McCARTHY and Polly A. McCarthy, Debtors.

Kramer Consulting, Inc., Plaintiff,

v.

Kevin P. McCarthy, Defendant.

Kevin P. McCarthy, Counter–Claimant,

v.

Kramer Consulting, Inc., Counter–Defendant.

Bankruptcy No. 05–39385 HCD.
Adversary No. 06–3010.

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

Sept. 28, 2006.

Theodore R. Saker, Jr., Esq., Saker Law Offices, Columbus, OH, attorney for plaintiff.

R. William Jonas, Jr., Esq., Hammerschmidt, Amaral & Jonas, South Bend, IN, attorney for defendant.

### MEMORANDUM OF DECISION

HARRY C. DEES, JR., Chief Judge.

This adversary proceeding was initiated by plaintiff Kramer Consulting, Inc. ("plaintiff" or "KCI"), which filed a "Complaint for Determination of Validity, Priority and Extent of Liens and for Determination of Dischargeability of Debt" against defendant Kevin P. McCarthy ("defendant" or "debtor") on January 17, 2006.[1] Presently before the court is Plaintiff's Motion for Partial Summary Judgment, filed by the plaintiff on April 6, 2006. After receiving the responses and briefs of counsel on the legal issues raised in the motion, the court took the matter under

---

1. Although the defendant filed a voluntary chapter 7 petition jointly with his wife Polly A. McCarthy, this proceeding was brought against only Kevin P. McCarthy.

advisement. For the reasons presented below, summary judgment is denied.

## Jurisdiction

Pursuant to 28 U.S.C. § 157(a) and Northern District of Indiana Local Rule 200. 1, the United States District Court for the Northern District of Indiana has referred this case to this court for hearing and determination. After reviewing the record, the court determines that the matter before it is a core proceeding within the meaning of § 157(b)(2)(I) and (K) over which the court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable in this proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014. Any conclusion of law more properly classified as a factual finding shall be deemed a fact, and any finding of fact more properly classified as a legal conclusion shall be deemed a conclusion of law.

## Background [2]

The plaintiff KCI is a computer consulting firm based in Dublin, Ohio. It entered into two business agreements with the defendant McCarthy and his company, Xcel Computers, in May 2000. Under the stock purchase agreement, the defendant bought 430 shares of the plaintiff's stock (43% of KCI) and paid for them with a promissory note for $107,500. Under the employment agreement, McCarthy became a director and the chief financial officer of KCI. However, the relationship between the plaintiff and defendant deteriorated soon after it began and they severed their employment relationship in 2001. Although the defendant retained his stock in KCI, he made only a few sporadic payments on the promissory note and stopped payments in January 2001.

The plaintiff filed two lawsuits in Ohio: one to recover the money the defendant had agreed to pay the plaintiff under the promissory note ("the note case"), and a second to recover damages based on claims of fraud, conversion, embezzlement, and breach of fiduciary duty ("the fiduciary breach case"). The defendant removed the cases from state court to federal court. The United States District Court for the Southern District of Ohio, Eastern Division ("Ohio district court") granted the defendant's summary judgment motion with respect to the plaintiff's claims of fraud, conversion and embezzlement. However, the plaintiff's fiduciary breach case went to trial.

On May 18, 2005, an Ohio jury found that the defendant had breached the fiduciary duties he owed to the plaintiff. It awarded the plaintiff compensatory damages of $49,000 (based on a finding of the defendant's breach), punitive damages of $150,000 (based on a finding that the defendant's acts demonstrated malice), and attorney fees. The defendant filed several post-trial motions, including a motion for a new trial. While the motions were pending, the defendant filed a chapter 7 bankruptcy petition in the Northern District of Indiana. The Ohio district court issued its Opinion and Order on March 8, 2006, concerning the defendant's post-trial claims. Among its decisions was a denial of the defendant's motion for a new trial and a reduction of the amount of compensatory damages to $23,148. See R. 15, Ex. H.

The note case was concluded in favor of the plaintiff after the parties obtained a valuation of the shares of KCI stock. By

---

2. The undisputed facts are summarized from the parties' submissions and from the Opinion and Order of Judge Algenon L. Marbley, District Judge of the United States District Court for the Southern District of Ohio, Eastern Division, attached as Exhibit H to the Plaintiff's Motion for Partial Summary Judgment. See R. 15, Ex. H.

its Order of July 7, 2005, the Ohio district court "granted judgment against Defendant in the amount of $127,416.67, with interest at 7% from June 1, 2005." *Id.*, Ex. A.

The plaintiff then began proceedings supplemental to collect on the Ohio judgments in Indiana. On July 13, 2005, it filed the Ohio district court's Order of July 7, 2005 in the United States District Court for the Northern District of Indiana, South Bend Division ("Indiana district court"). *Id.*, Ex. B. The plaintiff then executed against the defendant's property that was held by three corporations in Indiana. In August 2005, by commencing garnishment proceedings, the plaintiff levied on the defendant's ownership of stock in Professional Information Center, Inc. ("PIC"), Effective Enterprise Management, Inc. ("EEM"), and TFP and Associates, LLC ("TFP"). *See* R. 15, Ex. C, D, E. The Indiana district court issued a Court Order and Notice of Garnishment to each of the companies. The defendant filed bankruptcy two months later.

On October 14, 2005, the defendant and his spouse filed a voluntary joint chapter 7 petition. On their schedules they listed as personal property 100% of the stock in PIC and 100% of the stock in EEM. The current market value of the debtors' interest in each company was reported to be $50. The debtors claimed a $50 exemption in the PIC and EEM stocks, as well. On February 15, 2006, the Trustee filed a Report of No Distribution, confirming that there were no assets available for distribution from the estate. The debtor was discharged on March 27, 2006, and the case was closed on May 8, 2006.

█ The plaintiff commenced this adversary proceeding on January 17, 2006, by filing a Complaint containing two counts. It reported that, prior to the defendant's filing of his chapter 7 petition, the plaintiff obtained two judgments against the defendant in the Ohio district court, filed the judgments in the Indiana district court, and levied on the defendant's assets in Indiana. It further stated that the defendant's default on the terms of the promissory note he executed in favor of the plaintiff constituted a breach of the fiduciary duties he owed to the plaintiff. The first count of the Complaint focused on the promissory note judgment in the plaintiff's favor. It claimed that the plaintiff, by holding a lien against the defendant's property in the hands of TFP, PIC, and EEM, was a secured creditor. It also asserted that, because the defendant was an officer and director of the plaintiff KCI, the debt he owed to the plaintiff was in the nature of a breach of a fiduciary duty. The first count thus sought a declaratory judgment that the plaintiff's claim, based on the defendant's breach of fiduciary duty, be treated as a secured, nondischargeable claim pursuant to 11 U.S.C. § 506(a) and § 523(a)(2)(A).[3] The second count asked the court to declare that the plaintiff's claim, based on the Ohio district court's judgment following the jury award, be treated as a nondischargeable debt under § 523(a)(4). The plaintiff requested judgment against the defendant in the amount of $222,872.87.

In his Answer, the defendant denied that the plaintiff holds a secured claim; moreover, he argued, had the plaintiff acquired a security interest, it would be a voidable preference under § 547. He also denied that his debt to the plaintiff is nondischargeable under § 523(a)(4). By counterclaim, the defendant asserted that

---

**3.** The plaintiff made reference to 11 U.S.C. § 523(a)(2)(A) in his Amended Complaint but never argued that the defendant's debt to it was nondischargeable pursuant to that section. The court finds that the plaintiff has waived that statutory basis for claiming summary judgment.

the plaintiff accepted post-petition payments made under the Indiana district court's Order "even though the filings did not constitute an order of garnishment."[4] R. 4, p. 4 ¶ 3. He also argued that the plaintiff's action, in accepting a payment post-petition, constituted a violation of the automatic stay. The plaintiff, in reply, admitted accepting garnished funds but claimed that the funds were not property of the bankruptcy estate. It denied the remaining allegations and insisted that §§ 547 and 362 were inapplicable under the facts of this case. In conclusion, the plaintiff asked that the court dismiss the defendant's counterclaims.

The plaintiff then filed its Motion for Partial Summary Judgment on April 6, 2006. *See* R. 15. With respect to Count I, the plaintiff asserted that, as a matter of law, it holds a lien on the defendant's stock of PIC and EEM and therefore holds a secured claim. With respect to Count II, the plaintiff contended that the jury's finding that the defendant breached his fiduciary duties to the plaintiff, combined with the jury's assessment of compensatory and punitive damages, proved that the defendant's debt to the plaintiff was nondischargeable under 11 U.S.C. § 523(a)(4).[5] It insisted that the doctrines of res judicata and collateral estoppel precluded the relitigation of the facts and law decided by the jury. Turning to the counterclaims, the plaintiff announced that they failed. First, it claimed that its liens on the defendant's stock were not voidable preferences and that, in any case, the defendant lacked standing to avoid a prepetition lien under § 547. Second, since the plaintiff's proceedings against the defendant ceased when the petition was filed, none of the plaintiff's actions violated the automatic stay.

The defendant, in response, asserted that the plaintiff failed to acquire a lien on the defendant's stocks under Indiana law. As a result, the plaintiff is not entitled to prevail on its claim that it is a secured creditor with liens on the stocks. He further contended that a fiduciary under Ohio law is not necessarily a fiduciary for the purposes of § 523(a)(4). Noting that the Ohio district court threw out claims for fraud, embezzlement, and conversion, he suggested that a finding of fiduciary breach under Ohio law should not control a dischargeability determination in this court. Concerning the counterclaims, the defendant claimed that two actions of the plaintiff violated the automatic stay: the plaintiff's acceptance of a check from TFP, after receiving notice of the automatic stay; and the plaintiff's seeking of an award of attorney fees in the Ohio district court. In its reply memorandum, the plaintiff insisted that it had garnished the companies, not the defendant in his individual capacity. It distinguished the § 523(a)(4) bankruptcy cases upon which the defendant relied and argued that, under the doctrine of res judicata, the Ohio jury's verdict on the fiduciary breach issue forecloses relitigation of the issue in this court. Finally, the plaintiff again asserted that there was no evidence that it undertook any action in violation of the automatic stay. The court took the matters under advisement.

## Discussion

Although the plaintiff initiated the matters presently before the court by seeking summary judgment of most of the issues in

---

4. The defendant reported, in his Response, that the garnishee-defendant TFP paid $2,448 to the plaintiff. *See* R. 17 at 5. The plaintiff admitted that it received garnished funds. *See* R. 6, ¶ 3.

5. The plaintiff cited 11 U.S.C. § 523(a)(6) in his motion but never argued that its debt was nondischargeable under it. The court finds that the plaintiff waived that statutory basis for claiming summary judgment.

its complaint, the defendant counter-claimed that the plaintiff violated, indeed willfully violated, the automatic stay. Under the automatic stay provision of the Bankruptcy Code, once a petition is filed, all entities are stayed from commencing or continuing judicial actions or collection actions against the debtor. 11 U.S.C. § 362(a)(1), (6). In addition, "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." § 362(h). Before turning to the plaintiff's motion, therefore, the court considers whether the defendant can undo any post-petition actions of the plaintiff or recover an award of damages on the grounds that KCI willfully continued its post-petition collections in the Indiana district court (by receiving post-petition payments from garnishee TFP) and continued proceedings in the Ohio district court (by filing its attorney compensation request there).

A. *Defendant's Counter-claim of Willful Violations of the Automatic Stay*

■■■■ "The 'automatic stay' is a statutory injunction against efforts outside of bankruptcy to collect debts from a debtor who is under the protection of the bankruptcy court." *Aiello v. Providian Fin'l Corp.*, 239 F.3d 876, 878 (7th Cir.2001). When a debtor files a bankruptcy petition, his creditors are barred from any "effort to collect a debt directly from the debtor." *Id.* at 879. The debtor, as the party seeking damages for willful stay violations, has the burden of proving by a preponderance of the evidence what stay violation oc-

curred, what damages were suffered, and what relief is appropriate. *See Ball v. A.O. Smith Corp.*, 321 B.R. 100, 110 (N.D.N.Y.2005), *aff'd*, 451 F.3d 66 (2d Cir. 2006); *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 404–05 (1st Cir. BAP 2004).

■■■ In this case, the debtor defendant first charged that the plaintiff willfully violated the automatic stay by accepting payments from TFP, a garnishee of the plaintiff. The record reveals that TFP received a Court Order and Notice of Garnishment from the Indiana district court on August 16, 2005, two months prior to the defendant's bankruptcy filing. *See* R. 15, Ex. E. The court ordered TFP "to hold safely anything of value that belongs to the judgment debtor [the defendant] and has to be paid to the Court." *Id.* The parties agreed that TFP sent the plaintiff a post-petition check for $2,448.60, but nothing in the record explains this payment. The defendant's Schedule B lists his ownership of 100% of the stock in PIC and EEM but does not list any ownership of TFP stock. The only evidence before the court is that TFP, not the defendant, received the garnishment notice and that TFP, not the defendant, paid the plaintiff a check. There is no evidence that the plaintiff continued collection attempts after the defendant filed his petition. Nor is there any evidence that the defendant owned TFP stock or paid the plaintiff anything.[6] Therefore the defendant's allegation that the plaintiff was "continuing to garnish a third-party corporation owned by the debtor to satisfy the claim against the debtor," R. 17 at 11, *is not supported by the record.*

---

**6.** Even if the defendant, as corporate officer or statutory agent of TFP, took receipt of the garnishment notice on behalf of TFP, nothing in the record would suggest that he was acting in his individual capacity. *Cf. Middle Tennessee News Co., Inc. v. Charnel of Cincin-*

*nati, Inc.*, 250 F.3d 1077, 1081 (7th Cir.2001) (stating that, "[u]nder Indiana law, corporate officers and shareholders acting on behalf of the corporation are generally not liable for the contractual obligations of the corporation").

The court finds that the plaintiff's receipt of a check from TFP does not constitute a collection of a debt directly from the debtor. *See Aiello*, 239 F.3d at 879. The court therefore determines that the defendant has not met his burden of showing that the plaintiff's acceptance of the TFP payment was a violation of the automatic stay.

■ The defendant also alleged, in his response brief, that the plaintiff's filing of its attorney fee statement in the Ohio district court during the pendency of the defendant's bankruptcy was a stay violation. When a debtor files a bankruptcy petition, the automatic stay provision prohibits the commencement or continuation of a judicial proceeding against the debtor. *See In re Williams*, 144 F.3d 544, 546 (7th Cir.) (citing 11 U.S.C. § 362(a)(1)). In this case, the jury returned a verdict against the defendant on May 18, 2005, five months before his bankruptcy filing. The defendant moved for a new trial and sought to block the plaintiff's filing of its fees by filing post-trial Motions for New Trial and Remittitur and to Strike Post-Judgment Notice of Filing of Plaintiff's Trial Counsel's Time and Billing Statement. The defendant then filed his chapter 7 petition on October 14, 2005. Thus the jury decision and the defendant's post-trial motions occurred before the defendant filed bankruptcy, but the Ohio district court's Opinion and Order on those motions was issued after the filing, on March 8, 2006.

■ The court finds that the defendant's post-trial motions caused the Ohio district court to continue its deliberation. The Code's automatic stay provisions apply to judicial proceedings brought *against* the debtor, not to judicial proceedings brought *by* the debtor. *See Aiello*, 239 F.3d at 880; *Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir.1993). For that reason, the automatic stay does not block the Ohio

district court's March 8, 2006 order. Nor does it preclude the Ohio district court's specific order that "Plaintiff must file an amended Notice [of Filing of Plaintiff's Trial Counsel's Time and Billing Statement] with memorandum in support thereof by close of business on Wednesday, March 15, 2006." R. 15, Ex. H, at 22.

In conclusion, the court finds that the plaintiff's conduct after the defendant commenced his bankruptcy case cannot be construed as collection actions or as continuations of the judicial proceedings in the Ohio district court. The court determines therefore that the plaintiff did not violate the automatic stay under § 362(a)(1) or (6) and certainly did not willfully violate it pursuant to § 362(h). Having found against the defendant on his counterclaims, the court now turns to the issues raised in the plaintiff's summary judgment motion.

B. *Plaintiff's Motion for Partial Summary Judgment*

The plaintiff is able to prevail on its motion for summary judgment against the defendant only if it meets the statutory criteria of Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56(c), which is made applicable in this court by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348,

89 L.Ed.2d 538 (1986). In order to avoid trial, the moving party bears the initial burden of showing that no genuine issue of material fact is in dispute. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "To avoid summary judgment ... the nonmoving party [is] required to set forth 'specific facts showing that there is a genuine issue for trial,' Fed. R. Civ P. 56(e), and, further [has] to produce more than a scintilla of evidence in support of his position." *Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir.1999). The nonmovant must demonstrate that real factual disputes exist by producing evidence of the disputes rather than by relying solely on the allegations or denials in its pleadings. *See Barber v. United States (In re Barber),* 236 B.R. 655, 659 (Bankr.N.D.Ind.1998); N.D. Ind. L.B.R. B–7056–1. Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The court's role, therefore, is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir.2003) (quoting *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994)).

(1) *Count I: Secured Creditor Status*

■ In the first count, the plaintiff claimed that it is a secured creditor in the debtors' bankruptcy. *See* R. 1 at 2. In the Ohio note case, it explained, it won a judgment of $127,416.67 against the defendant. It enforced the Ohio district court judgment by filing it in the Indiana district court for execution in Indiana. The Indiana district court issued its Order and Notice of Garnishment on three Indiana corporations, PIC, EEM, and TFP, to garnish the defendant's interests in those companies.[7] The United States Marshal's Office served the Indiana district court's Order and Notice of Garnishment upon the statutory agents representing each of the companies, in accordance with Indiana practice and procedure. *See* R. 15 at 8–9, citing Ind.Code 34–55–3–5(d).[8] The agent of PIC and EEM, it appears, was the defendant. The plaintiff insisted that the levy on the defendant's stock in the hands of PIC and EEM constituted a lien on the stock. As a consequence, it argued, under Indiana law the plaintiff's claim against the defendant's stock in both corporations was secured. *Id.* at 9. Moreover, it asserted, the Ohio judgment became a secured debt on the date the plaintiff levied upon the stock, which was two months prior to the date of the defendant's filing of his bankruptcy petition. *Id.* at 9, 16.

The defendant, in response, insisted that the plaintiff failed to acquire a lien on the debtor's interest in the shares of stock in the two corporations. *See* R. 17 at 6. He claimed that service of the Court Order and Notice of Garnishment was not sufficient to perfect the lien on McCarthy's shares of stock in both companies. Relying on *In re U.S. Marketing Concepts, Inc.,* 113 B.R. 487 (Bankr.N.D.Ind.1990), he pointed out two procedural flaws in the creation of a lien. First, he stated that the lien was "intended to preserve the property of the judgment debtor [the defendant] *in the hands of a third party,*" 113 B.R. at

---

7. As stated earlier, the defendant has declared on Schedule B that he owns 100% of the stock in PIC and EEM.

8. Indiana Code 34–55–3–5(d) provides: "The shares of stock subject to be levied upon are bound by the execution from the time of the levy. When the levy is made, the sheriff shall leave the notice of the levy with the officers of the company. The levy constitutes a lien upon the stock from the time of the levy."

492, not *in the hands of the judgment debtor himself,* as it occurred in this case. R. 17 at 7–8. He also announced that the "notice of levy of the type referred to in I.C. 34–55–3–5(d) was never served." *Id.* at 8. Because no levy was made on the shares of stock, he argued, the stock was never encumbered with a lien and the plaintiff is not a secured creditor holding a lien on the stock. *See id.* at 8.

■■■ Garnishment is a remedy generally available for the enforcement of judgments. *See In re U.S. Marketing Concepts, Inc.,* 113 B.R. at 491; *cf. Boyer v. Conte (In re Import & Mini Car Parts, Ltd., Inc.),* 200 B.R. 857, 859 n. 1 (Bankr. N.D.Ind.1996) ("In Indiana, the owner of an unpaid judgment may, through proceedings supplemental and garnishment, seek to set aside and recover allegedly fraudulent transfers of the judgment debtor's property."). "A proceeding supplementary to execution is an independent action related to, but not part of, the original case in which the judgment sought to be collected by the judgment creditor was rendered." *Mitchell v. Godsey,* 222 Ind. 527, 53 N.E.2d 150, 154 (Ind.1944) *(quoted in In re U.S. Marketing Concepts, Inc.,* 113 B.R. at 491). Courts follow state law when garnishing a debtor's property. *See Freedom Group, Inc., v. Lapham–Hickey Steel Corp. (In re Freedom Group, Inc.),* 50 F.3d 408, 410 (7th Cir.1995); *In re Import & Mini Car Parts, Ltd., Inc.,* 200 B.R. at 859 n. 1 ("Through Rule 69(a) of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy proceedings by Bankruptcy Rule 7069, federal judgments may be enforced through the same procedures used by the state courts."). Because the plaintiff seeks to garnish the defendant's property in Indiana, Indiana's laws and procedures apply.

The court begins with the facts in the record. It finds that the Ohio district court granted judgment in the note case against the defendant on July 7, 2005, and that the plaintiff filed the Ohio certified judgment in the Indiana district court on July 13, 2005. The plaintiff, as judgment creditor, then filed its Affidavit declaring that it had good reason to believe that the garnishees PIC, EEM, and TFP held shares of stock owned by the defendant as judgment debtor. The Indiana district court entered its Court Order and Notice of Garnishment in favor of the plaintiff/judgment creditor in August 2005.[9] *See* R. 15, Ex. C, D.E. In its Order the court first stated that the affidavit was satisfactory to the court and then ordered the garnishees to complete the Answer of Garnishee and return it to the clerk of the court. After declaring that the total probable amount due on the judgment was $127,416.67, the court ordered the garnishees "to hold safely anything of value that belongs to the judgment debtor and has to be paid to the Court." *Id.*

This Notice of Garnishment was sent to PIC, EEM, and TFP two months prior to the defendant's bankruptcy. However, there is no record of further developments: The court is uninformed whether the garnishees returned their answers to the court or appeared in court, whether a hearing was held, or whether a final order of garnishment was issued. It appears that the Indiana district court did not enter a final order of attachment, which is the actual garnishment order. *See In re Freedom Group,* 50 F.3d at 410. The plaintiff's position is that it obtained a lien

---

9. The Court Order and Notice of Garnishment was issued to PIC on August 4, 2006, and to EEM and TFP on August 16, 2006.

on the stocks when the notice of garnishment was served on PIC, EEM and TFP.

A similar issue was presented to the Seventh Circuit Court of Appeals in *Freedom Group:* At what point does a garnishment action transfer property from a debtor to a creditor? In the facts before that court, a notice of garnishment was served on the bank on the 91st day before the declaration of bankruptcy, and the final order of attachment (equivalently, of garnishment) occurred on the 89th day before the bankruptcy. If the transfer of the funds occurred within 90 days of the bankruptcy, it was avoidable; otherwise it was not. *See id.,* 50 F.3d at 410. The appellate court found that, under Indiana law, the notice of garnishment freezes the garnished property "until the final order of attachment was issued." *Id.*

> The notice of garnishment is like a preliminary injunction.... It seeks to protect a creditor against the irreparable harm that will ensue if the debtor dissipates funds needed to pay the creditor. It does this by freezing funds owed to the debtor (as by the bank that was the garnishee in this case), so that they will be available to the creditor if and when he establishes his right to them.

*Id.* at 411; *see also Dorey v. Perfetti Builder's Hardware, Inc. (In re New Life Builders, Inc.),* 241 B.R. 507, 511 (Bankr. W.D.N.Y.1999) (contrasting and comparing Indiana garnishment law with New York garnishment law, finding that, under Indiana law, because the "notice of garnishment operates only as a preliminary

injunction, no property rights are ultimately transferred until a later stage in the collection process").

In deciding when a garnishment transfers property to a creditor, the circuit court relied on the Supreme Court's analysis in *Barnhill v. Johnson,* 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). In *Barnhill,* the issue before the Supreme Court was whether a transfer "occurred when the debtor delivered his check to the creditor or not until the bank on which the check was drawn honored the check." *Freedom Group,* 50 F.3d at 412. The Court held that the transfer occurred when the bank honored the check and not before; "myriad events can intervene between delivery and presentment of the check that would result in the check being dishonored." *Barnhill,* 503 U.S. at 399, 112 S.Ct. at 1390 (quoted in *Freedom Group,* 50 F.3d at 412). The appellate court then applied that rule to its case:

> The same thing is true here. Between the service of the notice of garnishment, corresponding to the delivery of a check, and the final order of attachment, corresponding to the bank's decision to honor (pay) the check, all sorts of events might intervene that would prevent the creditor from obtaining payment.

*Id.* at 412.[10] The court's holding is perfectly applicable to the circumstances before this court:[11]

> We conclude that a garnishment or attachment does not transfer money or other property to a creditor, for pur-

---

10. The court recognizes that the appellate court, in *Freedom Group,* stated at one point that a notice of garnishment creates a lien. *See id,* 50 F.3d at 410. This court agrees with the bankruptcy court in the Western District of New York, which recognized that "[t]his statement is inconsistent with the court's subsequent indication that the notice has only injunctive effect." *In re New Life Builders, Inc.,* 241 B.R. at 511 n. 2.

11. The appellate court, in *Freedom Group,* commented that cases holding that a transfer occurs when the notice of garnishment is served did not survive *Barnhill v. Johnson, supra. See id.,* 50 F.3d at 412. One such case is *In re U.S. Marketing Concepts,* 113 B.R. 487 (Bankr.N.D.Ind.1990).

poses of determining whether the transfer is an avoidable preference, until a final order of garnishment or attachment is issued. Until then, the transfer is tentative, its amount uncertain, and control or influence retained by the debtor to be used possibly to play favorites among his creditors.

*Id.* In *Freedom Group*, the transfer of the defendant's funds occurred at the time of the final order of garnishment or attachment, not the notice of garnishment. In the case before this court, however, only the Notice of Garnishment issued. The Notice required the garnishees EEM, PIC, and TFP to freeze the assets of the defendant but not to turn them over. There was no further order or hearing concerning the garnishment. Without a final order of attachment, *Freedom Group* teaches that the plaintiff as judgment creditor is not yet entitled to the stocks.[12]

The court finds, therefore, that there was no transfer or levy upon the stock held by EEM, PIC, or TFP, and therefore no lien on the stock of the defendant. The court determines that the plaintiff is not a secured creditor with liens on those stocks. Summary judgment on Count I of the plaintiff's Complaint is denied.

**(2)** *Count II: Breach of Fiduciary Duty*

The plaintiff also claims that it should be awarded summary judgment in this adversary proceeding pursuant to 11 U.S.C. § 523(a)(4), which provides that a bankruptcy discharge does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." It points out that the Ohio jury reached a verdict in favor of the plaintiff, finding that (a) the defendant breached his fiduciary duties to the plaintiff and (b) the defen-

dant's acts or omissions demonstrated malice. It then argues that "[t]hese issues, tried to a jury and carried through to judgment, constitute[ ] *res judicata* as to the non-dischargeability of Plaintiff's judgment in the Fiduciary Duty Case and collateral estoppel as to Defendant's hollow denials set forth in his answer." R. 15 at 10.

The Supreme Court, in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), summarized the distinction between res judicata and collateral estoppel: "Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." *Id.* at 139 n. 10, 99 S.Ct. at 2213 n. 10. *Brown* held that res judicata did not apply in dischargeability cases. "[W]e reject respondent's contention that res judicata applies here and we hold that the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt." *Id.*, 442 U.S. at 138–39, 99 S.Ct. at 2213. However, the principles of collateral estoppel do apply in adversary proceedings. *See Grogan v. Garner*, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); *Gupta v. Eastern Idaho Tumor Instit., Inc. (In re Gupta )*, 394 F.3d 347, 349 (5th Cir.2004) ("A bankruptcy court may apply collateral estoppel in a dischargeability proceeding to preclude relitigation of state court findings that are relevant to dischargeability.").

The doctrine of collateral estoppel, also called issue preclusion, prevents a party from relitigating issues previously determined in another court. *See Jensen v. Foley*, 295 F.3d 745, 748 (7th

---

12. Because the plaintiff does not have a lien on the defendant's shares of stock, the court need not consider whether the plaintiff's claim would have been a preferential transfer or whether the defendant would have had standing to avoid it.

Cir.2002). "The effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment ... provided the judgment was rendered in a proceeding that comported with due process of law." *In re Catt,* 368 F.3d 789, 790–91 (7th Cir.2004) (citing 28 U.S.C. § 1738 and supporting case law). In this case, a jury of the federal district court sitting in the northern district of Ohio rendered the judgment at issue. The Seventh Circuit Court of Appeals has stated that federal principles of issue preclusion apply when the first judgment is one from a federal court:

> Collateral estoppel will apply if: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action.... [I]t is very often necessary to consult substantive principles of state law in order to determine the scope of the earlier judgment or the parties who are bound by its terms.

*Havoco of America, Ltd. v. Freeman, Atkins & Coleman, Ltd.,* 58 F.3d 303, 307–08 (7th Cir.1995).[13]

In this case, the plaintiff insists that the same parties, with competent counsel, litigated the same facts in the Ohio lawsuit that they would litigate in this dischargeability adversary proceeding. Because collateral estoppel applies to preclude relitigation of issues and facts previously heard and decided, it argues that this court should determine that the plaintiff's judgment in the fiduciary breach case is excepted from the debtor's discharge under § 523(a)(4). The defendant responds that a state law fiduciary is not necessarily a fiduciary for the purposes of § 523(a)(4) and therefore the finding of breach of fiduciary duty in the Ohio district court jury verdict is not controlling in this bankruptcy adversary proceeding.

The record reflects that the plaintiff litigated its fiduciary breach lawsuit in federal court in Ohio, won a jury verdict against the defendant, and was awarded damages after both parties had a full and fair opportunity to litigate the issue. The parties were represented by counsel in the prior action, as well. However, the court finds that the plaintiff has not shown that the same issues presented in this adversary proceeding were involved in the former lawsuit. According to the plaintiff, the prior determination was based on a jury finding that the defendant violated his fiduciary duties to the plaintiff under Ohio Revised Code § 1701.54.[14] *See* R. 15 at 10,

---

13. Other circuit courts have stated the collateral estoppel elements for a federal court prior ruling was a federal one slightly differently. *See, e.g. Financial Acquisition Partners LP v. Blackwell,* 440 F.3d 278 (5th Cir.2006):

> A judgment is preclusive in federal court if: (1) the prior federal decision resulted in a judgment on the merits; (2) the same fact issue was litigated in that court; and (3) the issue's disposition was necessary to the prior action's outcome.... Finally, collateral estoppel does not apply unless the facts and legal standards used to assess those facts are the same in both proceedings.

*Id.* at 284 (citations omitted).

14. Ohio Stat. § 1701.54 Action without meeting (later effective date)

(A) Unless the articles, the regulations adopted by the shareholders, or the regulations adopted by the directors pursuant to division (A)(1) of section 1701.10 of the Revised Code prohibit the authorization or taking of any action of the shareholders or of the directors without a meeting, any action that may be authorized or taken at a meeting of the shareholders or of the directors, as the case may be, may be authorized or taken without a meeting with the affirmative vote or approval of, and in a writing or writings signed by all the shareholders who would be entitled to notice of a meeting of the shareholders held for such purpose, or all the di-

R. 20 at 6. That state statute permits a corporation's shareholders or directors to take an action without conducting a meeting under certain conditions; there is no reference in that provision to fiduciary duties. The plaintiff has not explained how the issues litigated pursuant to this Ohio statute are the same as the issues of "fraud or defalcation while acting in a fiduciary capacity" that must be litigated in the present dischargeability proceeding. Accordingly, the court finds that the statutory basis of the Ohio jury verdict is not comparable to the § 523(a)(4) exception to discharge provision of the Bankruptcy Code.[15] *See Ronk v. Maresh (In re Maresh)*, 277 B.R. 339, 348–50 (Bankr. N.D.Ohio 2001) (finding that, when the state statute does not create the elements required to establish "fiduciary capacity" under § 523(a)(4), then the plaintiff cannot sustain her burden under the defalcation exception to discharge).

The plaintiff has not presented to this court the factual bases underlying the fiduciary breach trial of the defendant. The court is unable to determine that the facts or issues sought to be precluded in this adversary are the same as those involved in the prior action. The Ohio district court rejected the plaintiff's claims of fraud, conversion and embezzlement, but allowed its claim of fiduciary breach to go to trial. This court must find, therefore, that the verdict in the fiduciary breach case was based upon the same facts necessary to except a debt from discharge "for defalcation while acting in a fiduciary capacity" under § 523(a)(4).

■ "The meaning of the words in § 523(a)(4) is a question of federal law," but "[b]ankruptcy law depends on, and implements, entitlements defined by state law." *In re McGee*, 353 F.3d 537, 540 (7th Cir.2003). The plaintiff has not shown this court that the defendant was acting in a fiduciary capacity. "Case law in the Sixth Circuit uniformly recognizes a distinction between a common law fiduciary relationship, and the 'fiduciary capacity' within which a debtor must be acting for a fraud or defalcation to be excepted from discharge under 11 U.S.C. § 523(a)(4)." *PaineWebber Inc. v. Magisano (In re Magisano)*, 228 B.R. 187, 191 (Bankr. S.D.Ohio 1998) ("The definition of a fiduciary under § 523(a)(4) is narrower than the traditional definition, and requires the existence of technical or express trusts."); *see also In re Maresh*, 277 B.R. at 348 (same). The Seventh Circuit has defined a fiduciary relationship under § 523(a)(4) as "a difference in knowledge or power be-

rectors, respectively, which writing or writings shall be filed with or entered upon the records of the corporation. Any certificate with respect to the authorization or taking of any such action that is required to be filed in the office of the secretary of state shall recite that the authorization or taking of such action was in a writing or writings approved and signed as specified in this section. (B) A telegram, cablegram, electronic mail, or an electronic or other transmission capable of authentication that appears to have been sent by a person described in division (A) of this section and that contains an affirmative vote or approval of that person is a signed writing for the purposes of this section. The date on which that telegram, cablegram, electronic mail, or electronic or other transmis-

sion is sent is the date on which the writing is signed.

15. The plaintiff may have intended to cite Ohio Code § 1701.59(b), which sets forth the duties of a corporation's directors. However, Bankruptcy Judge Richard L. Speer, United States Bankruptcy Court for the Northern District of Ohio, determined that the statute "simply codifies Ohio's business judgment rule" and does not define the specific fiduciary duties that are necessary to § 523(a)(4). *See Ronk v. Maresh (In re Maresh)*, 277 B.R. 339, 349 (Bankr.N.D.Ohio 2001) (concluding that the requirements needed to satisfy the "fiduciary capacity" requirement of § 523(a)(4) were not present in the Ohio statute).

tween fiduciary and principal which ... gives the former a position of ascendancy over the latter." *In re Marchiando,* 13 F.3d 1111, 1116 (7th Cir.), *cert. denied,* 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). Fiduciary relationships between directors and shareholders or between managing partners and limited partners are examples used in *Marchiando.* Although the plaintiff herein stated that the defendant was an officer and director of the plaintiff who held 43% of KCI's stocks, it did not tell this court what evidence was before the Ohio jury that led to its verdict. Without a showing that, for example, the defendant's position over others reflected a substantial inequality in power or knowledge, or that the defendant possessed "a position of considerable ascendancy over the other shareholders" under the shareholder agreement or his employment contract, this court cannot find that the same issue of fiduciary duty (under a common law relationship or created by statute) was involved in the prior litigation and in the present one. *See In re Frain,* 230 F.3d 1014, 1018–19 (7th Cir.2000) (finding fiduciary relationship under § 523(a)(4) based on the terms of the contract, which put defendant in "ascendent position" over others); *see also Delange v. Tsikouris (In re Tsikouris* ), 340 B.R. 604, 617 (Bankr. N.D.Ind.2006) (finding that an employer's unpaid debt for his share of plan contributions, despite his promise to superior to pay it, was not excepted from discharge under § 523(a)(4)).

It is also clear, however, that fiduciary relations do not require, as a *sine qua non,* a disparity in the knowledge or economic status of the participants. *See In re McGee,* 353 F.3d at 541; *see also In re Tsikouris,* 340 B.R. at 615 (concluding that it was "not merely the differential in power or knowledge between two parties to a relationship that gives rise to a 'fiduciary' relationship"). The terms of a contract, statute, or ordinance may create a

fiduciary relationship if those terms set forth real attributes creating a trust-like relation and are not just labels applied by the ordinance. *See In re McGee,* 353 F.3d at 540–41 (finding that a landlord's withdrawal and spending of her tenants' security deposit, instead of investing and preserving the funds, was an act of defalcation that disqualifies her from receiving a discharge). However, the plaintiff gave no details to demonstrate what evidence led the jury to find that the defendant breached his fiduciary duties. The plaintiff appears to assume that a jury's verdict of the breach of a fiduciary duty is sufficient proof that the issue does not require relitigation.

The plaintiff also asserted that "the jury empaneled in the Ohio District Court case rendered a verdict on precisely this issue: Defendant defalcated on his fiduciary duties to Plaintiff." R. 20 at 6–7. However, it offers no explanation of what the jury knew of the defendant's defalcation conduct. The jury's use of the labels "fiduciary" and "breach of fiduciary duty" do not guarantee a collateral estoppel application of the Ohio judgment. To satisfy the "fiduciary" element of § 523(a)(4), the plaintiff was required to show that the same facts comprised the basis of both the Ohio judgment and the dischargeability complaint herein. Likewise "defalcation" under § 523(a)(4) requires a showing of the same elements of defalcation under bankruptcy law and under Ohio law. Because there was no showing of the statutory or evidentiary bases of the Ohio federal jury's verdict, this court cannot determine that defalcation was actually litigated in the prior action and was essential to the final judgment. *See In re Gupta,* 394 F.3d at 352 (concluding that the jury's finding of breach of fiduciary duty was insufficient to warrant collateral estoppel); *In re Magisano,* 228 B.R. at 191 (finding that plaintiff failed to meet its burden of proving the

existence of the type of fiduciary relationship required for application of § 523(a)(4), denying motion for summary judgment).

The court determines that the plaintiff has failed to meet its burden of proving that the issue sought to be precluded in this adversary proceeding is the same as that involved in the prior action before the Ohio district court. As a result, the doctrine of collateral estoppel cannot apply and summary judgment cannot be granted. Therefore, summary judgment on Count II of the Complaint is denied.

### Conclusion

For the reasons set forth above, the Plaintiff's Motion for Partial Summary Judgment, filed by Kramer Consulting, Inc., against Kevin P. McCarthy, is denied. Further proceedings with respect to the plaintiff's Complaint will be set by separate order.

SO ORDERED.